# Wheeling.

JOHNSON *v.* BROWN *et al.*

(\*Absent, JOHNSON, JUDGE).

Decided April 27, 1878.

1. The inducement in a declaration in libel suit is, that the plaintiff had been the general superintendent of a certain corporation. The libelous writing was alleged to be as follows: "The plaintiff was, through his own and his brothers' influence, placed and retained in the general management of said corporation during the years 1871, 1872 and 1873 for their own private and individual gain, and not the corporation's; that especially during the year 1873 the plaintiff in the libel suit did use, and employ, the goods, money, means and credit of the said corporation for his own use, and his brothers' private use, business and benefit; that he took the goods and money of the said corporation to pay his own employes; that he borrowed money, and used it in his own business, and gave said corporation's notes therefor; that he and his wife purchased goods, wares and merchandize of divers persons and at various times during the years 1871 and 1872, and especially during the year 1873, for their own and friends' use, and had them charged to the corporation." The allegations being set forth in the declaration, the innuendo was: "Thereby meaning that the plaintiff had embezzled the goods and money of said corporation." The allegations without any innuendo would not be libelous in themselves; and the innuendo improperly extended the meaning of these words. And if the publication of these words had been all, that was complained of in the declaration, a general demurrer to the declaration ought to have been sustained.

2. But if such a declaration alleged the publication of a writing in these words: "The said plaintiff in the slander suit, and

1878
Special Term.

---

\*Was counsel in the cause below.

others, have been, and are, conspiring to defraud the other stockholders in said corporation, to divert the means, money and credit of the corporation to their own individual use and ends, and against the interest and welfare of the other stockholders in the said corporation;" and the innuendo is, "thereby meaning, that the plaintiff, while acting as the general superintendent and agent of said corporation, defrauded the said corporation, and conspired with other persons to defraud and cheat said corporation," this language without any innuendo was libelous; and the innuendo did not extend the meaning of the words. And as this allegation is in its nature distinct and divisible from the others, the defendant could not properly demur to the whole declaration; and such a demurrer ought to be overruled.

3. The libelous matter, stated above, being contained in a bill in chancery, filed under the fifty-seventh section of chapter fifty-three of the Code of West Virginia, and the bill having alleged that the party, who was plaintiff in the libel suit, had been elected general superintendent by himself and brothers, who held a majority interest in the stock of said corporation; and that they still voted such stock; and asking a decree of the court dissolving said corporation, the said allegations were pertinent to the case, sought to be made by the bill, and the relief prayed for; and no libel suit could be instituted based on them, they being absolutely privileged publications.

4. Libelous matters, published only in the due course of legal procedures, cannot be the basis of a libel suit, provided the court, in which they were published, had jurisdiction of the cause, and they were pertinent to the suit, even if they be libelous reflections on the character of persons, not parties to the suit, if the suit was not resorted to merely for the purpose of conveying the scandal, and as a cover for the malice of the party, and not in good faith for the assertion of a right, or redress of a wrong. If the suit was resorted to for such purpose, and with such wrongful motives, the court does not decide, whether such pertinent allegation would, or would not, be regarded as an absolutely privileged publication, exempting the party from liability to a libel suit, this question not arising in this case.

5. If a declaration on its face shows, that the libelous matters complained of were published in the due course of legal proceedures, it will be held fatally defective on general demurrer, unless it further shows, that the libelous matters complained of are not absolutely privileged publications under the general rule, that all such publications are so privileged, by alleging facts, that bring it within some exceptions to this general

rule, such as, that the court had no jurisdiction, or that the libelous matters alleged were not pertinent to such judicial procedure.

1878
Special Term.

Johnson
v.
Brown *et al.*

6. If the declaration allege facts showing, that the libelous allegations come within some exception to the general rule, a plea denying, that they come within such exception, named in the declaration, by alleging, that the court had jurisdiction, or that the libelous allegations were pertinent to the cause, as the case may be, is a good plea in bar, though it does not deny express malice.

7. A plea, that the libelous matters complained of were only published in the pleadings in a cause, instituted according to the regular course of judicial procedure, and that the defendant had reasonable cause for believing, and did actually believe, that they were pertinent to the cause, is a good plea in bar; and such plea need not deny express malice.

8. But if there is no allegation in the plea, that the libelous allegations were pertinent, or that the defendants had reasonable cause for believing, and did actually believe, them to be pertinent to the cause, it must then deny malice in the publication, or the plea will not be a good plea in bar.

9. All the above defenses to an action of libel may be proved under the general issue. And upon the trial on such issue if it appear, that the libelous allegations were published in the due course of legal procedure, though it be proved, that the court had no jurisdiction, or that the allegations were not pertinent to the legal procedure, still the law does not presume malice on the part of the defendant; but the plaintiff must prove express malice, to entitle him to recover. The simple fact, that the libelous matters were published in the due course of legal procedure, though the court had no jurisdiction, or the libelous matters were impertinent, rebuts the *prima facie* presumption of malice, and makes it incumbent on the plaintiff to prove express malice, the case being what is called a conditionally privileged publication.

10. The question, whether in such a case the libelous matters, if they are contained in the pleadings in a cause, are, or are not, pertinent to the cause, is a question of law, which ought to be decided by the court, and not a question of fact to be submitted to the jury.

11. A plea in bar, that the libelous matter was published only in a pleading in the regular course of judicial procedure, and was pertinent thereto, should conclude with a verification by the record, as it proposes for decision a question of law, and not one of fact.

*Supersedeas* to a judgment of the circuit court of the county of Tyler, rendered on the 14th day of November, 1876, in a certain action, in said court then pending, in which Isaac H. Johnson was plaintiff, and Nelson H. Brown and others were defendants, allowed on the petition of said defendants.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

This is an action of libel, brought in the circuit court of Tyler county, by I. H. Johnson against Nelson H. Brown, Jacob Hugus, Benjamin S. Morgan, Daniel C. Sweeney, Samuel E. Steele, Thomas D. Gorrell, Wilson Long and George W. Williamson. It was based on certain alleged libelous statements, contained in a certain bill in chancery, filed by the defendants in the circuit court of Tyler county, against the People's Manufacturing Company, at February rules, 1875. The declaration was filed at October rules, 1875, and is in these words:

"WEST VIRGINIA, TYLER COUNTY, TO-WIT :

"*In the Circuit Court thereof.*

"Isaac H. Johnson complains of Nelson H. Brown, Jacob Hugus, Benjamin S. Morgan, Daniel C. Sweeney, Samuel E. Steele, Thomas D. Gorrell, Wilson Long and George M. Williamson, being summoned, &c., of a plea of trespass on the case, for that whereas the said plaintiff is a good, true, honest, just and faithful citizen of West Virginia, and as such hath always behaved and conducted himself, and until the committing of the several grievances by said defendants, as hereinafter mentioned, was always reputed, esteemed and accepted by and amongst all his neighbors and other good and worthy citizens of this State, to whom he was in anywise

known, to be a person of good name, fame and credit, to-wit, at the county aforesaid; and whereas, also, the said plaintiff hath not ever been guilty, or until the time of the committing of the said several grievances by the said defendants, as hereinafter mentioned, been suspected to have been guilty, of fraud, of conspiring to defraud any one, of obtaining money, goods or credit under false pretense, or of embezzlement, or of any other such crime, by means of which said premises the said plaintiff, before the committing of the said several grievances by the said defendants, as hereinafter mentioned, had deservedly obtained the good opinion and credit of all his neighbors and other good and worthy citizens of this State, to whom he was in anywise known, to-wit, at the county aforesaid; and, whereas, before the committing of the said several grievances by the said defendants, here-inafter mentioned, this plaintiff, with his brothers, Daniel D. Johnson and Samuel Johnson, partners as Johnson Brothers, were the owners of certain stock in the People's Manufacturing Company, a corporation created by the laws of West Virginia, for the purpose, among other things, of manufacturing and selling woolen goods, and having made an assignment for the benefit of their creditors to one Zenas Martin, trustee, of the stock aforesaid, and the said stock so held by Zenas Martin, as trustee as aforesaid, being a majority of said stock in said company, and the controlling interest therein, the said trustee, with other stockholders, elected the said plaintiff and his two brothers, among others, for the year 1873, directors of said company, as was perfectly lawful for them so to do, and that the said board of directors, for the year last aforesaid, elected the plaintiff superintendent of said company; and the said defendants, for their own purposes, at February rules, 1875, filed a bill in chancery in the circuit court of Tyler county for the purpose, as said bill alleges, to close up the affairs of said company; yet the said defendants, well knowing the premises, but greatly envying the happy state and

condition of the said plaintiff, and contriving, and wickedly and maliciously intending, to injure the said plaintiff in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace with and amongst all his neighbors and other good and worthy citizens of this State, and to cause it to be suspected and believed by those neighbors and citizens, that he, the said plaintiff, had been guilty of fraud, of conspiring to defraud others, of obtaining money, goods and credit under false pretense, and of embezzlement, and to subject him to the pains and penalties, by the laws of this State made and provided against and inflicted upon persons guilty thereof, and to vex, harrass, oppress, impoverish and wholly ruin the said plaintiff, heretofore, to-wit, on the 10th day of February, 1875, to-wit, at the county aforesaid, in the bill in chancery so filed as aforesaid, falsely, wickedly and maliciously did compose and publish, and cause and procure to be composed and published of and concerning the said plaintiff, and of and concerning his conduct while acting as superintendent and agent of the People's Manufacturing Company as aforesaid, a certain false, scandalous, malicious and defamatory libel, containing, amongst other things, the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, and of and concerning his conduct as superintendent of the said People's Manufacturing Company, which said libelous matter was not material or pertinent to the subject matter of said bill—that is to say: "The said plaintiffs," meaning the said defendants as plaintiffs in said bill in chancery, "further say, that the said Isaac H.," meaning Isaac H. Johnson, the plaintiff, "Daniel D. and Samuel Johnson have been, and are, conspiring to defraud the other stockholders in said company," meaning the other stockholders in the said People's Manufacturing Company, "to divert the means, money and credit of said company to their own individual use and ends, and against the interests and welfare of the other stock-

1878
Special Term.

Johnson
v.
Brown *et al.*

holders in said company," meaning the People's Manufacturing Company; "that the said Isaac H. Johnson," meaning the plaintiff, "was through his own and his brothers' influence placed and retained in the general management of said company," meaning the People's Manufacturing Company, "during the years 1871, 1872 and 1873, for their own private and individual gain, and not the company's; that especially during the year 1873, did the said Isaac H. Johnson," meaning the plaintiff, " use and employ the goods, money, means and credit of the said company," meaning of the People's Manufacturing Company, "for his own and his brothers' private use, business and benefit; that he took the goods and money of the said company to pay his own employes; that he," meaning the plaintiff, "borrowed money and used it in his own business, and gave the company's notes therefor," meaning that he gave the notes of the People's Manufacturing Company therefor, "as they," meaning the said defendants, "are informed and believe, and therefore charge; that he and his wife," meaning the plaintiff and his wife, "purchased goods, wares and merchandise of divers persons, and at various times, during the years 1871, 1872, and especially during the year 1873, for their own and friends' use, and had them charged to the said company," meaning the People's Manufacturing Company; thereby meaning by the libelous matter aforesaid, that this plaintiff, while acting as the general superintendent and agent of the said the People's Manufacturing Company, defrauded the said company, and conspired, with other persons, to defraud and cheat said company; that he did obtain money, goods and credit on the faith of said company on the false pretense, that he was authorized so to do, and defrauded the company out of the same; and that he and his wife had obtained goods of divers persons, and had them charged to the said People's Manufacturing Company, and never accounted therefor; and that he, the plaintiff, had embezzled the goods and money of the

said People's Manufacturing Company. By means of the committing of which said several grievances by the said defendants, the said plaintiff hath been and is greatly injured, and hath by reason thereof sustained damage, to the amount of $10,000.00. Wherefore, he brings this suit," &c.

On November 10, 1876, the defendants withdrew certain special pleas, filed by them, and demurred to the declaration; and thereupon the court overruled the said demurrer. And thereupon the defendants tendered eight pleas in writing, numbered respectively 1, 2, 3, 4, 5, 6, 7 and 8, to the filing of which pleas, and each of them, the plaintiff objected. And the court having considered the said objections overruled the same as to pleas 1, 2, 3, 4, 5 and 6, and allowed the same to be filed, and sustained the said objections as to pleas numbered 7 and 8, and rejected the same, to which ruling of the court the defendants excepted, and filed their bill of exceptions, which was signed, sealed and enrolled. And the defendants also subsequently filed the plea of not guilty, to all of which pleas the plaintiff replied generally.

The first special plea alleges, that the supposed libelous matter complained of was a part of a bill in chancery, filed at the February rules, 1875, of the circuit court of Tyler county, according to the regular course of judicial administration in said court, setting forth the bill, as hereinafter stated, at large; which they say was the only bill or writing ever published by them, which comprised among other things, said supposed libelous matters; and that they were composed and published in said bill in good faith and without malice; and that they were pertinent and material to the object and purposes of said bill; and that all this they were ready to verify; whereupon they prayed judgment, &c.

The second plea was the same as the first, except that it further alleged, that the plaintiff was a member of the board of directors of the defendants in said chancery suit; and that the said court had jurisdiction thereof.

1878
Special Term.

Johnson
v.
Brown *et al.*

The third plea is the same as the second, except that it does not allege, that the said supposed libelous matters, inserted in said bill, were material and pertinent to the objects and purposes of the bill.

The fourth plea is the same as the first, except that it does not set forth the bill, nor state, that the supposed libelous matters, contained in it, were pertinent or material to the purposes of the bill.

The fifth plea was the same as the second, except that it alleged, that the bill was filed in good faith and without malice ; while the second plea alleged, that the supposed libelous matters had been inserted in the bill in good faith and without malice.

And the sixth plea differs from the fifth, only as it omits to state, that the said supposed libelous matters were material and pertinent to the objects of the bill, and that the court had jurisdiction of the case.

The seventh plea, which was rejected by the court, was like the second plea, except that instead of alleging, that the supposed libelous matter was material and relevant to the case, sought to be made by the bill, it alleged, that the defendants were advised and believed, that all the facts and allegations of said bill, and especially all the facts and allegations, complained of as libelous by the plaintiff, were material and pertinent to the case, sought to be made by the bill.

And the eighth plea, also rejected, varied from this, in that instead of this it was alleged, that the defendants believing, and having cause to believe, that the allegations, in said bill complained of as libelous, were true, were advised, and did believe, the said allegations to be material and pertinent to the case, sought to be made in the bill.

The bill in chancery, referred to and made a part of the pleas above stated, is in these words :

'*Bill of Complaint.*

Jo nson
v.
Brown *et al.*

" IN THE CIRCUIT COURT OF TYLER COUNTY, WEST
.VIRGINIA.

" *To the Hon. James M. Jackson, Judge of the Circuit
Court of Tyler County :*

" The bill of complaint of Nelson H. Brown, Jacob
Hugus, Benjamin S. Morgan, executor of the last will
and testament of Andrew J. Morgan, deceased, Benja-
min Morgan in his own right, Daniel C. Sweeney,
Samuel E. Steele, Thomas D. Gorrell, Wilson Long and
George W. Williamson, plaintiffs, against the People's
Manufacturing Company, defendant, filed in the circuit
court of Tyler county :

"The plaintiffs complain and say, that they are stock-
holders in the People's Manufacturing Company, a com-
pany incorporated under the laws of West Virginia, on
the 16th day of September, 1865, by a certificate of
incorporation of that date, and located and doing busi-
ness at Shiloh, in the county aforesaid. A correct copy of
which certificate of incorporation is printed and bound
with the Acts of the Legislature for the year 1866, pages
249-50, and a duly certified copy of which said certifi-
cate of incorporation, recorded in the office of the clerk
of the county court of the county aforesaid, is here-
with filed, marked exhibit " A," which, together with
the above printed copy, is made a part of this bill.

" The said plaintiffs further say, that the capital stock
of the said People's Manufacturing Company consists of
eight hundred and thirty and one-half shares, of $20.00
per share, all paid in—making the said company's paid
up capital amount to $16,610.00 ; that its property
consists of certain parcels of land lying on both sides of
and including the adjacent bed of Middle Island creek;
in the county aforesaid, with certain water privileges in
said creek, among which is the right of maintaining a
dam across said creek; of two mills—one a grist and
saw mill, the other for the manufacture of woolen goods

—located one on each side of said creek, and both run by water power; of a store room, ware room and tenement houses— all of which said mills and buildings are situate on the aforesaid parcels of land—(certified copies of the deeds to the said company therefor are herewith filed, marked exhibits " B" and " C," and made a part of this bill)—and of certain manufactured goods, raw materials, a miscellaneous stock of goods usually kept in a country store, and bills receivable.

" The plaintiffs further say, that the liabilities of said People's Manufacturing Company, and liens against it, are large; that among them is a judgment against said company, in full force and wholly unsatisfied, for $3,097.07, with interest since the 4th day of November, 1873, and costs, amounting to $8.05, in favor of Nelson H. Brown; a deed of trust on said company's property, securing to the said Brown the payment of the further sum of $2,200.00, to become due and payable on the 30th day of April, 1875, and subject to no credits; that both said judgment and deed of trust are duly recorded in the office of the clerk of the county court of Tyler county, and are liens against the property of the said company—(certified copies of which said judgment and deed of trust, marked exhibits "E" and "F," are herewith filed and made a part of this bill); and of other large and numerous sums, due and unpaid to divers persons and aggregating in the neighborhood of $4,000.00.

" The said plaintiffs further say, that of the aforesaid eight hundred and thirty and one-half shares, comprising the capital stock of said company, they collectively own three hundred and thirty-three and one-half shares; that those three hundred and thirty-three and one-half shares are more than one-third interest of the capital stock of said company, and that they are held by them respectively, as follows, viz: Nelson H. Brown, one hundred and fifty shares; Jacob Hugus, fifty-one shares; Samuel E. Steele, twenty-five shares; Thomas D. Gorrell, eighteen shares; Daniel C. Sweeney, fifteen shares;

Wilson Long, twelve shares; Benjamin S. Morgan, executor of the last will and testament of Andrew J. Morgan, seven and one-half shares; Benjamin S. Morgan in his own right, jointly with Nelson H. Brown and Jacob Hugus, fifty shares. The certificates issued to the plaintiffs for the aforesaid stock are herewith filed as exhibits, marked by the names of the holders thereof and made a part of this bill.

"The said plaintiffs further say, that of the residue of the stock of the said company four hundred and fifty-two shares originally belonged to Daniel D. Johnson, Isaac H. Johnson and Samuel Johnson, partly as partners, as Johnson Brothers, and partly in their individual right; that the said Johnsons, in the latter part of the year 1870, made an assignment of the aforesaid four hundred and fifty-two shares for the benefit of their creditors; that no sale has ever been made of the goods, &c., conveyed by said assignment; that the creditors of the Johnsons, for whose benefit said assignment was made, have not released the same; that they, the said Johnsons, have ever since said assignment, and have yet, had control of the said four hundred and fifty-two shares, and they control fifteen shares more standing on the books of the company in the names of other parties.

"The said plaintiffs further say, that the aforesaid Johnsons have, by reason of their having control of the majority of the capital stock of said company, been able to possess themselves of, and retain the management of, said company during the years 1871, 1872 and 1873; that they relinquished the management for the year 1874; that at the annual election of directors of said company for the year 1875, they, the said Daniel D., Isaac H. and Samuel Johnson, elected themselves directors of said company; that the board of directors of said company consists of five persons, and that the said Johnsons constitute a majority of said board and control its proceedings; that they, the said Johnsons, being a majority of said board, elected one Zenas Martin to the general business management and superintendence and

secretaryship of said company; that the said Zenas Martin is not a stockholder in said company; that, as general business manager and superintendent of said company, he will have complete control of its affairs, with the power of borrowing money and giving the company's obligations therefor; that he is not required to give bond conditioned for the faithful performance of the duties of his said position of general superintendent and manager, and that he has comparatively little property of any kind, and that he is a brother-in-law of the said Daniel D. Johnson, and has been employed by the said Johnsons in the capacity of a clerk in said company during the years 1871, 1872 and 1873, during which said years the said Isaac H. Johnson held the position of general manager and superintendent of said company. These plaintiffs are informed and believe, and therefore charge, that the said Zenas Martin has been elected to the general management and superintendency of the said company with the understanding that he, the said Martin, is to be governed and controlled by the said Johnsons, and to subserve, in the management of said company, the private and individual interests of the said Johnsons, and not the interests and welfare of the said company; and that the said Johnsons have committed a fraud upon, and done great wrong to, the other stock holders in said company in the election of the said Martin to the general management of said company.

" The said plaintiffs further say, that the said Isaac H., Daniel D. and Samuel Johnson have been, and are, conspiring to divert the means, money and credit of the said company to their own individual use and ends, and against the interest and welfare of the other stockholders in said company; that the said Isaac H. Johnson was through his own and brothers' influence placed and retained in the general management of the said company during the years 1871, 1872 and 1873, for their own private and individual gain, and not the company's;

that especially during the year 1873 did the said Isaac H. Johnson use and employ the goods, money, means and credit of said company for his own and his brothers' private use, business and benefit; that he took the goods and money of the said company to pay his own employes; that he borrowed money and used it in his own business, and gave the company's notes therefor, as they are informed and believe, and therefore charge; that he and his wife purchased goods, wares and merchandise of divers persons and at various times during the years 1871, 1872, and especially during the year 1873, for their own and friends' use, and had them charged to the said company; that these transactions were well known to the said Daniel D. Johnson and Samuel Johnson, and that they connived at them; that thereby the said company and its other stockholders were defrauded and deprived of great gains; that the said Isaac H. Johnson is largely indebted to the said company; and that he and the said Daniel D. Johnson and Samuel Johnson are hopelessly and largely insolvent.

" The said plaintiffs further say, that the said Johnsons and the said Zenas Martin are well known to the business community, with which the said company will have to deal, and that they are distrusted by said community, and by it known to be reckless, extravagant, untrustworthy and improvident in business, and that thereby the said company will be placed at great disadvantage and suffer great loss; and that so long as they continue to control said company, the interests of said company, and particularly of its other stockholders, will suffer great detriment and prejudice, and great and irreparable loss will befall the minority stockholders.

" The said plaintiffs further say, that the said company has never paid any dividend save an eight per cent. dividend in goods; that this dividend was not a profit, but that the company was largely indebted at the time it was declared; that the said company has been in operation six or seven years, and that from use, and the nat-

ural wear and tear, the company's property has been greatly depreciated in value, and the means and opportunities of paying its large indebtedness are being greatly impaired ; that its indebtedness has been constantly augmenting since the organization of said company, except during the year 1874, during which time the said Johnsons exercised no control over said company; that its stock has depreciated until it is offered, and can be purchased, at 50 cents on the dollar ; that the personal property of all kinds, inclusive of all receivable demands, is far insufficient to pay its debts already due, owing and unpaid, although the invoiced value of said goods and demands of all kinds exceed the said company's liabilities by a small sum ; that several years of the most successful, economical, honest and skilful management of said company would be required to pay off its indebtedness ; that such successful, economical, honest and skilful management of said company cannot be expected from the said Johnsons, who are notoriously unskilful and prodigal in business, if they are allowed to control said company.

"The said plaintiffs further say, that two suits are now pending against the company for the recovery of about $1,500.00; that many other suits will speedily be instituted, if the said Johnsons and said Martin remain in control of said company ; that executions will be issued against it, and that the court costs and other incidental costs will greatly decrease the funds, from which said company's debts are to be paid; that the company has no cash on hand, with which to pay off its operatives.

"The said plaintiffs further say, that at the annual meeting of the stockholders of the said People's Manufacturing Company, held, after due notice, upon the 9th day of January, 1875, they, the said plaintiffs, being desirous of winding up the business of said company, made a motion to dissolve said company, and that there were voted two hundred and ninety-one and one-half shares in favor of such dissolution and voluntary winding up ;

that all of these said plaintiffs were and are in favor of dissolving said company, but that one or two of them was unrepresented at the aforesaid stockholders' meeting, and that their stock was not voted, and that said Johnsons resisted the said motion for voluntary dissolution and defeated it, casting against it the four hundred and sixty-seven shares, that they control.

"The said plaintiffs further say, that the said Johnsons, by reason of their gross insolvency, are unable to purchase the stock of said plaintiffs in said company at its probable real value, about fifty cents on the dollar; that by reason of the control, which the said Johnsons have over said company, and their known business incapacity and past gross mismanagement of its affairs, they are unable to dispose of their stock to other parties; and that the said Johnsons refuse to sell to these plaintiffs, who are willing to buy at a fair price, their, the said Johnsons,' stock in said company.

" The said plaintiffs further say, that the said People's Manufacturing Company was incorporated for carrying on the grist and saw-mill business, and the trading necessarily connected therewith, the manufacture of wool or cotton, or both, and the trading necessarily connected therewith; and that the said company has for several years, in addition to the above business and corporate purposes, been carrying on a store stocked with the usual stock of goods found in a country store; that the keeping and maintaining of said store is foreign to the purposes, for which said company was incorporated, not necessarily connected therewith, and has been a source of great loss and injury to the said company, or all of its stockholders, except the said Johnsons, who have made great profits and gains out of it, and drawn from it supplies for their own private use and consumption. The said plaintiffs therefore pray your Honor inasmuch as they are remediless at law, that the said, People's Manufacturing Company may be required to answer this bill, under its corporate seal, exhibiting its

charter, the number of its stockholders, and the stock held by each, and a list of its creditors, with the amount of their respective claims; that the said company may be dissolved, and its business wound up under the supervision of this court; that its property and effects be sold and converted into money; that the proceeds of such sales and conversions be first applied to the satis- faction and payment of the company's debts; that the residue thereof be distributed *pro rata* among its stock · holders, according to the amount of their stock; that the said board of directors of said company be enjoined and inhibited from exercising further and other control over said company, than may be necessary for the said company's defense therein; that the said Zenas Martin be enjoined from acting as general manager and superin- tendent of said company, and from disposing and receiv- ing any goods or moneys of said company; and that some proper person be appointed a receiver of said com- pany's property, effects, claims and demands, with power to protect said property, collect said demands and dis- pose of said goods, materials, &c., at public or private sale, as he may deem best for the company's interest, upon reasonable notice. They also ask such other, further and general relief as the court may see fit to grant.

" Nelson H. Brown,
' "Jacob Hugus,
" Benjamin S. Morgan,
" *As Executor and in his own right,*
" Daniel C. Sweeney,
" Samuel E. Steele,
" Thomas D. Gorrell,
" Wilson Long and
" George Williamson,
" *Per Counsel.*"

" State of West Virginia, Ohio County, ss :

" Benjamin S. Morgan, one of the plaintiffs named in the foregoing bill, being duly sworn, says, that the facts

and allegations therein contained, so far as they are stated on his own knowledge, are true, and that so far as they are stated upon information, he believes them to be true.

"B. S. MORGAN,
"One of the Plaintiffs.

"Taken, sworn to and subscribed before me this 22d day of January, 1875.

"GEO. E. BOYD,
"Notary Public for Ohio County, West Virginia."

The case was tried; and on the 13th day of November, 1876, the jury found the defendants guilty, and assessed the plaintiff's damages at $500.00; and thereupon the defendants moved the court for a new trial; and the court overruled the motion; and on November 14th, 1876, rendered a judgment for the plaintiff against the defendants for $500.00, the damages found by the jury, with interest thereon from November 14, 1876, until paid, and the costs of the plaintiff, by him in this suit expended.

Exceptions were taken during the trial by the defendants to the admission of certain evidence; and a portion of the evidence, so objected to but admitted by the court, was certain entries on the books of the People's Manufacturing Company, of which the defendants were directors. Some of the defendants were present, and some absent, when the board of directors took the action recorded in these entries. The following are specimens of these entries:

"ANNUAL REPORT.

"To the Hon. Board of Directors of the People's Manufacturing Company:

"Your committee, appointed by you to make settlement of the business of the company for the year ending January 3, 1874, and also to settle with the super-

intendent for the same period, respectfully submit the following:

\*      \*      \*      \*      \*      \*

" OFFICE PEOPLE'S MANUFACTURING COMPANY,
                  January 9, 2 o'clock P. M.

" Stockholders met pursuant to adjournment, E. B. Brennan in the chair.

" The annual reports of the committee and superintendent were read by the secretary and considered.

" On motion of T. D. Gorrell, and on second of Jacob Hugus, it was unanimously resolved that the superintendent, I. H. Johnson, be exonerated from any censure or blame in his management of the company's business while he has had charge of the same.

"On motion of E. B. Brennan, and second of B. S. Morgan, it was unanimously ordered, that the superintendent be allowed for his services the past year the balance of his account, which is $639.45.

"SHILOH, W. VA., January 9, 1875.

" The annual meeting of the stockholders of the People's Manufacturing Company was held at their office.

" T. D. Gorrell moved, that this company——dissolve. A vote by stock was called for by Zenas Martin. The following was the result of the vote on dissolution: Ayes—N. H. Brown, 150; Jacob Hugus, 51; B. S. Morgan, 50; T. D. Gorrell, 18; D. C. Sweeney, 15; A. J. Morgan, 7½—291½. Nays—Zenas Martin, trustee, 452; Isaac Moore, 5; J. A. Johnson, 5—462."

And also this evidence was offered by the plaintiff to show malice of Jacob Hugus, one of the defendants, to-wit: The evidence of one Musgrove, that, after the said bill was filed, Jacob Hugus had been asked by Musgrove, what would be the consequence, if they, the defendants, in this suit, failed to prove the allegations of said bill? to which said Hugus replied, that he thought there would be no difficulty about proving them. And this

12

evidence the court, on defendants' motion, refused to exclude from the jury ; and the defendants excepted.

The court granted the following instructions to the jury at the instance of the plaintiff :

### "*Instruction No.* 1 *for the Plaintiff.*

" The jury are instructed, that, if they believe from the evidence, that the language used in the bill in chancery filed in this court by the defendants, given in evidence to the jury, referring to the plaintiff in this action, Isaac H. Johnson, was not pertinent and material to the purpose and object of the said bill, and unnecessary therefor, and that the said language contains the libel charged in the declaration in this action, then the publication of said language was not privileged, and as such no protection to the defendants; and that the *law presumes malice* in the defendants in causing said language to be written and published.; and the jury must find for the plaintiff."

### " *Instruction No.* 2 *for Plaintiff.*

" And the jury are further instructed, that, if they believe from the evidence, that the language charged as libelous matter was pertinent and material in the said bill, but if they also believe from the evidence, that the defendants were actuated by malice in fact towards the plaintiff in causing the said language to be written and published as charged, then they are to find in favor of the plaintiff. And, in determining whether the defendants were so actuated by actual or express malice, the jury are to take into consideration the proper construction of the written words charged as libelous, the facts and circumstances connected with the matter, and the situation and relation of the parties, together with the fact, whether the said language was pertinent and material to the purposes and object of the said bill."

### " *Instruction No.* 3 *for Plaintiff.*

" If the jury believe, the said alleged libelous matter

was pertinent and material to the object of the bill, and further believe, that the said alleged matter is false, and there was no probable cause for the use of the said alleged matter in said bill in chancery, then the malice is proved; and the jury must find for the plaintiff."

To the giving of each of which the defendants objected, and upon their being given, excepted. The defendants then asked the court to give the two following instructions:

### " *Instruction No. 2 for Defendants.*

" That if the jury believe from the evidence, that the libelous matter, complained of by the plaintiff, was composed and published only in the due course of judicial procedure by the defendants, and that the said defendants believed, that said matter was pertinent to the case, they sought to make, and the relief they prayed for, then the jury will find for the defendants."

### " *Instruction No. 4 for Defendants.*

" It the jury believe from the evidence, that the libelous matter complained of by the plaintiff was regularly composed and published by the defendants in the due course of judicial procedure, they will find for the defendants; unless they are satisfied beyond a reasonable doubt, that such composing and publishing was done by the defendants with actual malice towards the plaintiff."

But the court refused to give said two instructions, and the defendants excepted. The defendants also excepted to the refusal of the court to grant a new trial. And all the facts proven are certified; but, as in my judgment the verdict of the jury ought to be set aside without reference to the facts, proven at the trial, other than that the libel consisted of allegations in said bill, it is unnecessary here to state them.

To the judgment of the court rendered on November 14, 1876, the defendants have obtained a *supersedeas.*

*Henry Russell* and *T. J. Hugus,* counsel for plaintiffs in error, relied on the following authorities:

Townsd. on Slander § 209 ; *Id.* § 221, and cases cited ; Stark on Slander, 246 and cases cited ; 2 Add. on Torts (Wood's ed.) § 1092 ; 14 Eng. Rep. 127 ; 4 Com. 91 ; 25 Gratt. 343 ; 3 How. (U. S.) 266 ; 3 Sandf. 341 ; 38 Ala. 280 ; 15 Gratt. 381 ; 3 Call 3 ; *Id.* 446 ; 2 Munf. 10 ; Townsd. on Slander ·§§ 336 and 337 ; 25 Gratt. 495 ; 3 Johns. Ca. 193 ; Townsd. on Slander § 215 ; 2 Add. on Torts (Wood's ed.) §1153 ; 3 Pick. 379 ; 3 How. (U. S.) 290 ; 18 C. B. 126 ; 3 Camp. 461 ; 4 B. & C. 655 ; 4 Conn. 290 ; 3 How. (U. S.) 291 ; 1 Stark. on Slander, 293, 294 ; 10 A. & E. (N. S.) 905 ; 4 Rob. Pract. 733 ; 7 Johns. 271 ; 12 Conn. 262 ; 5 Bing. 17 ; 1 C. & M. 11 ; 9 East. 93 ; 2 Stark. on Slander 53 ; 3 Wash. C. C. 31 ; 2 Jones (N. C.) 175 ; Bigelow's Lead. Ca. on Torts, 158, 162.

*John A Hutchinson,* for defendant in error :

The preface, or *inducement* of the declaration sets forth certain facts explanatory of the relation, in which the defendants in error stood toward the corporation whose dissolution, it was pretended, was sought to be effected by the libelous bill of complaint.

1st. *Materiality* and *pertinency* are relative terms. In judicial proceedings matters concerning strangers to those proceeding are not pertinent and never material ; they do not enter into the issue, and, of course, not in the judgment or decree of the court. Courts will not permit their records to be the registry of malevolence, or the vehicles of libels, against parties ; with stronger reasons, not against strangers.

2d. The allegation of the declaration, that the matter complained of was not pertinent or material, founded on the premises alleged, was sufficient to raise the question, whether libel or not. Whether "pertinent and material," is in substance in such case the same, as whether libelous or not.

Defamatory matter in a bill in chancery, if pertinent and material, is *conditionally* privileged; the condition depending on the presence or absence of malice against the defamed. The declaration, charging the matter complained of to be impertinent and immaterial and also maliciously alleged, states a case of libel, which is proper for the consideration of a jury.

" Privileged communications " do not mean, that there is a class of actors or transactions placed above the cognizance of, the law, absolved from all commands of justice. " A privileged communication " means nothing more, than that the occasion of making it rebuts the presumption of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws on him the onus of proving malice in fact; *but not of proving it by extrinsic evidence only ; he has still a right to require that the alleged libel itself shall be submitted to the jury*, that they may judge, whether there is evidence of malice on the face of it. *White* v. *Nicholls*, 3 How. (U. S.) 287 ; *Dillard* v. *Collins*, 25 Gratt. 343.

Under the general issue evidence may be given, that the libel was *written* under privileged circumstances, and was not malicious. *McPherson* v. *Daniels* 10 B. & C. 263, (21 Eng. C. L.).

3d. *Probable cause*, in civil actions, is a principle to be found specially applicable to actions for malicious prosecution, and *in consimili casu.*

4th. Counsel contends, " that the averment in the declaration, that the words were used maliciously and were false, is not enough ; that the privilege, taking away all presumptions of guilt, throws upon the plaintiff the burden of alleging and proving everything." He goes much further than this. He says : " it *relieves* defendants from the ordinary liability to *know* at their peril the *truth* of their statements, and compels plaintiff to allege and prove falsity of the words, and want of *probable cause to believe them* true." Such a position is in conflict with fundamental principles of the law of libel.

No book of *authority* sustains such doctrine. In the first place, it is not essential, in a case of libel like this, to aver that it is false. The law presumes the plaintiff to be an honest man and true, and what the law presumes need not be alleged. Townsd. §73; *Hunt* v. *Bennet*, 19 N. Y. 176; *White* v. *Nicholls*, 3 How. 284.

5th. Nor is it necessary to allege, that there was no probable cause to believe the libelous charge true.

Plaintiff is bound to declare nothing not essential to be proved. If *belief* in the truth of the defamatory matter constituted any defense, it might be requisite for the plaintiff to negative such *belief*, but this is not the law. *Moore* v. *Stevenson*, 27 Conn. 14; *Woodruff* v. *Richardson*, 20 Conn. 238; *Watson* v. *Moore*, 2 Cush. 133; *Gilmer* v. *Eubank*, 13 Ill. 271; 1 Am. L. C. (4th Ed.) 166.

If an honest belief is no extenuation, certainly a predilective readiness to *believe*, and maliciously to publish, would not be. Townsd. §216; *Grimes* v. *Coyle*, 6. B. Mon. 301; *Gray* v. *Portland*, 2 Serg. & R. 23, per Brackenridge, judge.

There is no *probable cause* for a lie. Slander or libel cannot be excused, because the utterer or publisher had a belief, that the charge was probably true. The duty is to *know*. Ignorance or imbecility does not extenuate, especially when coupled with malice. The truth must be known, or nothing published; else peril follows.

" Probable cause " in actions for libel or slander between citizens, not involving any matter of a public interest or concern, cannot be predicated in any method of defense therein.

Cases may be found, in which persons in official station have been plaintiffs in actions of libel, where the defense of " probable cause " has been admitted; but they are few, and the principle strictly is inapplicable.

6th. The arguments of both the learned counsel consist of propositions drawn from the law of malicious prosecution; the established doctrines in that class of cases are these, viz:

*First*—The strictly technical action of malicious prosecution is authorized, where the party has been indicted for *crime* and been acquitted, or finally discharged. It is sustained by showing a *want of probable cause* for the prosecution.

*Second*—Another class is that, where the individual for mere misdemeanor involving no moral turpitude, is prosecuted in a criminal proceeding.

The action in this class, is. on the case ; and the falsity of the charge, the knowledge thereof, and actual injury must be shown to support the action.

*Third*—Another kind of action on the case lies, where special damage is occasioned to the person or the property of another by maliciously, and without probable cause, instituting a civil suit.

But unless in such civil suit the person be arrested, or held to bail, or his property attached, or other similar wrong be inflicted, this action will not lie.

For the mere prosecution of a civil suit, where neither the person of the defendant, nor his property, is seized, or detained, the latter has no remedy by action.

And we think we can affirm, that until the printing and publication of the arguments of the learned counsel of the plaintiffs in error, it was never for a moment dreamed that an individual, not a party to a suit, one neither indicted, nor sued, nor served with process, nor in any manner connected with the proceeding of record, was entitled to either of the remedies just described. 1 Am. L. C. (4th Ed.) 207.

7th. In regard to the innuendoes : If the words published are libelous on their face, the innuendoes are unnecessary, and may be omitted.

It is admitted by Mr. Russell, that the words of the *first clause*, read by themselves, impute dishonesty to the plaintiff. There being *one count* only in the declaration, this admission states a sufficient reason why the demurrer was properly overruled.

The office of the innuendo is well established, when it

is necessary, and when not. See *Moseley* v. *Moss*, 6 Gratt., 549, 550; *Hansbourgh* v. *Stinnett*, 25 Gratt. 498.

In *Rex* v. *Horne*, Cowp. 672, Lord Mansfield, speaking of the introductory averment, or colloquium, and the innuendoes, said: "Now at first, and at present, it seems to me, that '*of and concerning the King's government, and the employment of his troops*,' pins it down." The libel was linked to the colloquium in that case, by adopting the principle, that "plain words in a libel speak for themselves; if they are doubtful, their meaning must be ascertained by an innuendo. Here the words are plain and want no innuendo."

To the same effect see Grey, Chief Justice, in the same case in the House of Lords.

When therefore the matter alleged as libelous sufficiently appears to concern the plaintiff, and relates to him in the manner set forth in the inducement, the innuendo will not be required, to define that which is explicit enough already. *Moseley* v. *Moss*, 6 Gratt. 534; Townsd. §344.

Whenever the innuendo has enlarged the meaning beyond the proper and just interpretation of the words, it will be rejected. *Adams* v. *Lawson*, 17 Gratt. 250.

The distinction is clear between the *inducement*, which must be proven; and the innuendo, which is not provable. 1 Am. L. C. 138; Townsh. 342.

If, as the authorities all agree, the innuendo which enlarges the meaning of words susceptible of but one sense, may be rejected as surplusage, and if the words themselves, referring to the status of the plaintiff and and his relation to the matters in the inducement, are libelous without the aid of an innuendo, how can the declaration containing such innuendoes be demurrable?

The meaning defined by the innuendo, is only important, where the matter is equivocal. 1 Am. L. C. (4th ed.) 141.

Where such is the case, and an injurious meaning is defined by the innuendo, of course the defendant in

justifying must do so with the meaning given by the innuendo. And what does this impose? Simply, that the defendants, in taking issue with the plaintiff on the words in the sense attributed, must be held to establish it. If he applied the words in an *innocent* sense, he has the opportunity to make that appear on the general issue.

"Plain words and clear allusions," says Lord Mansfield, " must be construed according to their obvious meaning, and as everybody else who reads must understand them." A different or qualified sense must be established by the defendant.

It is urged, that although innuendoes too broadly drawn may be rejected as surplusage, yet, where the words compose divisible libelous matter, the defendant in justifying is nevertheless bound to accept the meaning attached to the words of the innuendoes, and prove them as used in such sense. This is a misapplication of the principle, that the justification must be as broad as the charge.

The defendant may justify one part of a divisible libel. Counsel admits the libel here is made up of several distinct charges. The first, which is admitted to be libelous, might have been justified, if true. *McGregor* v. *Gregory*, 11 M. & W. 287 ; *Sterling* v. *Sherwood*, 20 Johns. 206.

And if the innuendoes are surplusage, is there any rule requiring the defendant to plead to matters of surplusage?

When the court rejects the too extended innuendoes, they are no longer, in effect, in the record. And a demurrer for matters of surplusage is not available, where the declaration is sufficient to require any issues in fact.

Where the writing relates to the plaintiff and is libelous, innuendo is unnecessary and is to be disregarded. 4 Rob. Pract. 733 ; *Adams* v. *Lawson*, 17 Gratt. 250.

The case last cited is one that the learned counsel " finds it utterly impossible to support by reason or

13

authority," notwithstanding it was decided by that most profound and distinguished jurist Judge Joynes and by a unanimous court.

We are content, when we find doctrine announced by that eminent tribunal, to accept it, until we have a brighter light. And, considering the labored discussion of the question by the learned counsel in his attempt to overrule the Court of Appeals of Virginia, we are still without that light.

There is nothing in the point, that the cases cited by Mr. Robinson (4 Rob. Pract. 733) were determined on motions after verdict, and not on demurrer.

Such "a continuous line of authorities," in which many great lawyers appeared before many learned courts, without interposing demurrers to the declarations on the ground now presented in this case, indicates very satisfactorily that the practice must have been deemed "more honored in the breach than in the observance;" doubtless influenced by the maxim of Lord Coke: That it is "an excellent point of learning in actions for slander not to demur," but to take advantage of the declaration not stating a cause of action, either on the trial or by motion in arrest of judgment. Townsd. §362.

Where the defendant had the choice either to demur, which " *admitted the truth of the innuendoes,*" 1 Am. L. C. 141 (4th ed.) or move in arrest of judgment, in which the *whole* record upon the law of the case was before the court, (2 Tidd Prac. 825) it seemed more prudent to adopt the latter practice.

But Lord Mansfield, in *Rex* v. *Horne*, saw no material difference, in a libel case, between a demurrer and a motion in arrest of judgment.

There is no doubt, that if the words in their natural sense, as applied to the plaintiff in the manner averred in the introduction are not libelous, the meaning ascribed in the innuendo will not aid them, and advantage may be taken of this fault either on demurrer or by motion in arrest of judgment; but this simply is stating, that if

the declaration sets forth no cause of action, it is bad on demurrer or in arrest of judgment.

The proposition, that the plaintiff must prove the libelous *words* charged, and the *sense* imputed to them by the innuendo, is stated too broadly. The plaintiff must prove the *words* alleged, but the *sense* defined by the innuendo must be ascertained by the jury from the words, in view of the circumstances attending the publication.

The innuendo is not the subject of proof. Townsd. §§342, 384. If the plaintiff enlarges the common meaning of the words by the innuendo, upon the general issue, he must fail; for the meaning of the words is a question of fact for the jury. 1 Am. L. C. 132, 141.

8th. The rejection of the pleas. Pleas 7 and .8 contain no defense.

Counsel seem to have abandoned No. 7, so that 8 is the only one to be considered. This plea avers " that the defendant believing and having *cause* to believe, that the allegations in the bill were true, were advised and did believe the allegations to be material and pertinent to the case, &c."

We have shown that " probable cause" is not a question arising in this case ; and it is certain that *belief*, that what is published is true, will not avail, " however honestly that belief may be entertained." *Darby* v. *Ouseley*, 36 Eng. Law. & Eq. 518; *Campbell* v. *Spottis-woode*, 2 B. & S. 769; *Watson* v. *Moore*, 2 Cush. 133; *Gilmer* y. *Eubank*, 13 Ill. 271.

In the case of *Lawson* v. *Hicks*, 38 Ala. 280, the plaintiff was a party to the suit; and in other respects the case is not in point.

Both pleas were bad, in not denying malice ; and the matters attempted to be interposed by them might have been admitted on the general issue. Townsd. §405; *Hastings* v. *Lusk*, 22 Wend. 410; Starkie on Sl. 332; Buller N. P. 10.

Counsel mistake in stating that plea No. 8 sets up

"*probable* cause." The plea does not use any terms of that import. The "cause" to believe the libelous matter was true was not "probable," but malicious. This we may safely say since the defendants failed to justify, and the jury have found for the plaintiff.

9th. Of the corporation book.

These entries are admissible. *Hartwell* v. *Vesey*, 9 C. B. N. S. 882; *Burton* v. *March*, 6 Jones Law (N. C.) 409; *Kine* v. *Sewell*, 3 M. & N. 298.

But, if the entries were incompetent, the objection was waived by the plaintiff in error in subsequently introducing the same minute book, and in examining the defendants in error in relation to them. Pages 34, 36, 37, 38, record; *Grimm* v. *Hamel*, 2 Hilt. 434.

10th. The fact, that Hugus, one of the plaintiffs in error, after the filing of the bill of complaint, told Musgrave, that there would be no difficulty about proving the allegation of the bill, was admissible against the defendant Hugus upon the question of malice. It was in effect saying the charges are true, and we will prove them as alleged. *Fry* v. *Bennett*, 27 N. Y.; Townsd. §392.

11th. The first instruction given stated the law correctly. The issues were the plea of not guilty, and the six special pleas, alleging pertinency and materiality and denying malice.

It was proper therefore to inform the jury, that if from the evidence they believe the language in the bill in chancery referred to the plaintiff, and was not pertinent and material thereto, and that the libel complained of is embraced in the said bill, then the publication of said language was not privileged, and the law in such case presumed malice in the defendants.

It was precisely the converse of what the plaintiffs in error claim the law to be; that if the matters were pertinent and material, there is no libel; but if not, then the publication is evidence of malice. *Warner* v. *Paine*, 2 Sandf. 195; *Hastings* v. *Lusk*, 22 Wend. 418;

*Howard* v. *Sexton*, 4 Com. 157; *Bromage* v. *Prosser*, 4 B. & C. 247; *Dillard* v. *Collins*, 25 Gratt. 350.

Whether the language will bear the construction, placed on it by the plaintiff, is for the court; whether the meaning is truly assigned, is for the jury. Townsd. §342; *White* v. *Nicholls*, 3 How. 291, 292.

The case in 6 Heiskell, (Tenn.) 395, cited by Mr. Hugus, and relied on as a parallel case to this, is evidently contrary to the general current of authorities.

The effect of that decision is, that in the case of a conditionally privileged communication probable cause and a *reasonable* belief in the *speaker's* mind, that his statements are true, *if without malice*, are not actionable. Now while it is correct that malice, express or actual, must be shown in a case of *prima facie* privileged publication, it is not true that probable cause, or reasonable or any belief, in the mind of the libeler, is of any importance whatever, in an action of libel.

The decision is right in holding that actual malice in such case must be shown to the satisfaction of the jury; but is otherwise in conflict with the weight of authority. *Woodruff* v. *Richardson*, 20 Conn. 238; Townsd. §216.

It would appear to be inconsistent to refer the question of pertinency or relevancy to the jury, but it is the province of the jury, in all cases of libel to determine whether the publication is or is not libelous. The mere fact that the libel appears in a judicial proceeding, does not deprive the jury of their office to decide the whole question. *Parmiter* v. *Coupland*, 6 M. & W. 105, 108.

If the plaintiffs in error preferred the court's opinion, they might have obtained it by demurring to the evidence; where without a jury, the court can determine that the publication was *bona fide*, without malice, and that the occasion clearly rebuts the inference of malice, then it would be unnecessary to leave the question to the jury.

" In many cases the whole question of privileged communication has been left to the jury." *Cooper* v. *Stone*,

24 Wend. 434, 442, it was determined that the question of privileged communication cannot be settled on demurrer to the declaration, but requires the intervention of a jury. 1 Am. L. C. (5th ed.) 193, 194; *Carpenter* v. *Bailey*, 57 N. H.

In *Dillard* v. *Collins*, p. 451, following the part quoted by counsel for plaintiffs in error, it is said : " But even in such case (*i. e.* of privileged communication) it is for the jury to determine whether (*where the words written or spoken without doubt come within the scope of confidential or privileged communication*) they are written or published maliciously."

If anything is settled in the law of libel, in the class known as cases of privileged. communication, it is that while the legal inference of malice cannot be drawn, proof of *actual* malice will deprive the publication of its privilege.

12th. The third instruction for the plaintiff was proper.

Though the libelous matter was pertinent and material, yet if it was false, and published in the absence of probable cause for making use of it, it was malicious; for in the words of Daniel, Judge, in *White* v. *Nicholls:* " Falsehood and the absence of probable cause amount to proof of malice." The learned counsel differ in their objections to this proposition. One says it is bad because it defines how malice is proved ; the other declares it would have been good had the " pertinent and material" part been omitted.

13th. While Mr. Russell appears to abandon instruction No. 2 for the defendants, Mr. Hugus contends for its correctness ;. and still relies on the decisions he abandoned. He surrenders his flag but clings despairingly to the staff. The bare reading of that instruction is enough to reject it. Because a party in a judicial proceeding, publishes matter which he knows to be false but believes to be pertinent, the jury must find for the defendants !

The instruction No. 4 tor defendants is equally vicious.

The first branch of it, asserts the *exploded* doctrine of *absolute privilege*. The second clause qualifies the first by requiring the jury to be satisfied, that actual malice in the defendants, existed beyond a reasonable doubt.

This is a civil cause, and the jury were to determine the facts upon the preponderance of evidence. *Ellis* v. *Buzzell*, 11 Am. Reg. 204; *S. C.* 12 Am. L. R. 426 and note ; *Simmons* v. *Insurance Co.*, 8 W. Va. 474, 498.

So far as the contrary is stated in cases cited by counsel for plaintiffs in error, they are overruled.

15th. There was no error in overruling the motion to set aside the verdict.

Upon the propositions heretofore established as the law of this case, it was proper to overrule this motion.

Allow that the court had jurisdiction of the bill in chancery ; that the matters charged were material and pertinent, yet if they were false and maliciously made the verdict was plainly right.

Counsel, assuming that the words were pertinent, insist :

*First.* " That the *privilege* for such words is *absolute.*"

We will not repeat here the argument against this position. Counsel have admitted that there are now no *absolutely* privileged communications; that the more recent and best sustained cases have settled that privileged communications are *prima facie* privileged only; and with this admission forced by the distinguished array of authorities in support of it we are willing no longer to discuss it, except, to observe that the case of *Dawkins* v. *Lord Rokeby*, 14 Eng. R. 127, depended upon very peculiar circumstances. Lord Penzance, as well as the Lord Chancellor, remark upon the particular fact that the parties, and the tribunal where the words were uttered, were of the military, and with excessive caution both expressed their purpose to limit their opinions to the special case.

This case, and the case of *Revis* v. *Smith*, were actions

against witnesses. Whilst public policy might not be inclined to subject a witness to an action, who may be punished for falsehood, on indictment, a party guilty of libel would have impunity, if no action lay against him.

*Second.* It is insisted by counsel that the plaintiff must not only prove the publication, as laid, but also that the words were used and intended in the sense, and with the meaning alleged; that the plaintiff by innuendoes, having placed a meaning on the words of which they are not susceptible, he is bound to fail unless he can make it good by his evidence. We may reply to this, that as the innuendo is not provable by evidence, the plaintiff is not required to produce it. And if the innuendo be too large, it cannot result in anything more serious than in being disregarded. Townsd. §342.

*Third.* Counsel asserts that if the words were *pertinent* the plaintiff could make out his case only by *proving* the words were *false.*

In the absence of any plea that the words were *true,* no evidence of their falsity could be reasonable required of the plaintiff. Words are not true though they may be pertinent ; and the authorities do not in this particular make any distinction between cases of *prima facie* privileged communications and those where the privilege does not arise. 2 Starkie 59 ; Townsd. §73.

While in *White* v. *Nicholls* it is said that *falsehood* and absence of probable cause will amount to proof of malice it is not there determined that the plaintiff must prove the *falsehood.* The proof is made upon the *failure* of the defendants to justify by asserting the words were true. He who used the words must be taken to have known them to be false, if he will not allege in his defense and prove them true, The citation from 1 Starkie 293–4, is not in point.

In *Stuart* v. *Lovell,* 2 Stark. 94, Lord Ellenborough said, there being no plea of justification : " I can no more hear a falsification on the one side than a justification

on the other." The entries in the minute books of the company made by the parties, in regard to the defendant in error, and showing that his official conduct was then deemed fair and honorable went to the jury partly for the purpose of proving that the defendants in the action *knew* when they conspired to file their libel that the charges they therein made against him were false. It was unnecessary for the case, but convenient and conclusive.

*Fourth and lastly*, On the motion, counsel, returns to the position that if the words had been proved false, it was nevertheless necessary to prove want of *probable cause.*

Again, the analogy between this and an action for malicious prosecution is taken; and the definition of probable cause, given in *Spengler* v. *Davy*, 15 Gratt. 381, is quoted.

We cannot deny the accuracy of that definition. It is the genuine *belief* of a man of *ordinary caution, prudence* and judgment, founded on circumstances *sufficient* to form that *belief*, and this, when introduced as a principle of defense in an action for libel, must mean nothing more than that the libel was justifiably published because the publisher believed the occasion privileged the publication. This is the *petitio principii*. It is privileged because there was probable cause; and because the plaintiff does not prove the absence of probable cause, probable cause will be inferred, and hence the *privilege* must be inferred. But this method of avoiding the effect of settled principles in the law of libel, becomes more evident, if we examine the second definition of probable cause taken from *Munn* v. *Dupont*, " a reasonable *ground of suspicion* supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the *person accused is guilty of the offense* with which he is charged," and says, Mr. Russell, it devolves on the plaintiff to show the absence of probable cause! That is, if a cautious man suspects you of

being guilty, and accuses you, you must in an action for libel prove your innocence, or want of reasonable grounds for suspicion. This course of reasoning is intended to escape the effect of the rule that *belief* in the truth of the libelous matter is no defense; and the other rule, that the defendant must plead the truth of the words; otherwise it shall be held to be false. Hence, if this mode of induction is valid, although the words are false, proved to be so, yet if the defendant believe from circumstances that the facts existed upon which he rests his belief, the plaintiff must prove that no circumstances existed from which such facts could rise and that the defendant therefore had no justification for his belief. This would take from the plaintiff the benefit of the legal presumption of honor and honesty, and compel him to prove himself worthy instead of requiring the defendant to prove him unworthy, or suffer for his libel.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question arising on this record is: Did the circuit court err in overruling the demurrer to the declaration?

Two defects are asserted to exist in the declaration, either of which, it is claimed, renders it liable to a general demurrer. The first is, that the innuendoes in the declaration, "that the plaintiff did obtain money, goods and credit on the faith of said company on the false pretenses, that he was authorized so to do, and defrauded the company out of the same," and that " he, the plaintiff, had embezzled the goods and moneys of the said People's Manufacturing Company," improperly extended the meaning of the alleged defamatory matter; that these innuendoes state substantially, that by the alleged defamatory matter the defendants meant to charge the plaintiff with being guilty of the criminal offenses of

obtaining money under false pretenses and of embezzle-
ment. The plaintiffs in error insist, that there is nothing
stated in the declaration, which can give this meaning
to the alleged defamatory words.

I think their criticism of the declaration just. The only words in the alleged libelous matter, to which the plaintiff can be supposed as referring, when he charges, that the defendant meant to charge him with these criminal offenses, are these : " That the plaintiff borrowed money and used it in his own private business, and gave the company's note therefor," and " that the plaintiff and his wife purchased goods, wares, &c. for their own use, and had them charged to the company," and these words: " The plaintiff took the goods and money of the said company to pay his own employes."

The only allegation in the declaration, which could serve to show the meaning of these words, is the allegation, that the plaintiff was the superintendent of said company. His doing of the things above charged, while he was superintendent of the company, did not constitute the criminal offenses of procuring money under false pretenses, or embezzelment ; and the innuendoes therefore improperly extend the meaning of the defamatory matter.

It is the duty of the court to determine, whether a publication is capable of the meaning ascribed to it by the innuendo. An innuendo, when proper, explains the meaning of the defendant's publication by reference to other facts, previously alleged in the declaration. And it is for the court to determine, whether this meaning, thus attached to the publication by the plaintiff, in the light of all the facts stated in the declaration can fairly be deduced. If not, the declaration is defective. Where there is but one meaning attached by the plaintiff to all the alleged defamatory words, used by the defendants, and this meaning is such, that the words used explained by all the facts, stated in the declaration, will not fairly bear the meaning given, the effect is to render the

declaration fatally defective on demurrer, at least when the complaint without the innuendo would be insuffi- cient.

The above alleged defamatory words, on which are based the innuendoes of these criminal charges, would, without any innuendo, be insufficient to sustain the plain- tiff's action ; for entirely unexplained, they would in themselves not be libelous. And when this is the case, and no facts are stated in the declaration, which will justify the libelous or slanderous meaning, attached to the words by the innuendo, the declaration is fatally defective, and may therefore be demurred to. See *Mosely* v. *Moss,* 6 Gratt. 534 ; *Beswick* v. *Chappel,* 8 B. Mon. 486.

The allegations, which in this case are extended by the innuendo to charges of criminal offenses, are not of themselves libelous. The taking by the superintendent of a company of the goods and money of the company to pay his own employes, so far from being in itself embezzlement, does not unexplained amount even to a charge of dishonesty of conduct. For the law requires, that the words must be clearly and unequivocally libel- ous on their face ; and if not, averments must by made, on which an innuendo can be properly based, giving a clear and unequivocal libelous meaning to the words, used in the publication.

Thus it has been held in *Mosely* v. *Moss,* 6 Gratt. 551, that the words, " Turpin's negroes were trading and trafficking with the plaintiff Moss (who was an overseer) and were carrying bacon to the coal pits," did not in themselves impute dishonesty to Moss as an overseer.

In the case of *Eliza Kelly* v. *Partington,* 5 B. & Ad. 645, 27 Eng. Com. Law 145, the declaration alleged, that the defendant said : " She secreted 1s 6d under the till ; stating these are no times to be robbed," and it alleged as special damages, that by reason of the speaking of these words one Stenning refused to take the plaintiff into his service. The court held, that these words were

1878
Special Term.

Johnson
v.
Brown, et al.

not in themselves slanderous, as they might be construed to mean, that she had secreted her own and not her master's money.

In *Stockly* v. *Clement*, 4 Bing. 162, 13 Eng. Com. Law, 392, it was held, that an advertisement warning the public, that the defendant's acceptance of a certain bill of exchange, purporting to be drawn by the plaintiff on her, was a forgery, did not of itself amount to a libel.

For the same reason the alleged libelous words " the plaintiff borrowed money and used it in his own business and gave the company's notes therefor," and the words, " the plaintiff and his wife purchased goods for their own and friends' use, and had them charged to the company" do not of themselves amount to a libelous charge. Not only are they insufficient to amount to a charge of obtaining money or goods under false pretenses, but also in themselves and unexplained, they do not amount to a charge of fraud or dishonesty.

A superintendent of a company may well use the money of a company in paying his own employes, or borrow money in their name, and use it himself, or buy goods for himself in their name, without necessarily being guilty of either a crime, or of dishonesty and fraud. For the money or goods, so used, may well have been accounted for to the company. The mere failing to keep the moneys and goods of the company distinct from his own is not only not a crimnal offense; but also does not necessarily imply any dishonesty of purpose in a superintendent. And therefore such allegations, without facts being stated to show, that the defendants intended by the use of such words to charge the plaintiff with crimes, or with fraud and dishonesty, accompanied by an innuendo, that such was their meaning, would not sustain an action; for these words alone are not libelous.

The declaration in this case being in this particular defective, ought the demurrer to have been sustained?

1878.
Special Term.

Johnson
v.
Brown *et al.*

Syllabus 2.

If these had been the only words, complained of as libelous, or if the innuendo, that thereby the defendants intended to charge the plaintiff with the crimes of procuring money under false pretenses and embezzlement, had been the only innuendo, the demurrer to the declaration ought to have been sustained. But the declaration is not limited to these charges. It alleges, that the defendants in said bill in chancery published and composed these words : " The said Isaac H. Johnson, the plaintiff, Daniel D. and Samuel Johnson have been and are conspiring to defraud the other stockholders in said company, to divert the means, money and credit of said company to their own individual use and ends, and against the interest and welfare of the other stockholders in said company;" and there is also this innuendo : " Thereby meaning by the libelous matter aforesaid, that the plaintiff, while acting as the general superintendent and agent of said company, defrauded the said company. and conspired with other persons to defraud and cheat said company."

This innuendo does not enlarge the meaning of the libelous words, and is unobjectionable. The declaration therefore really consists of several different matters, divisible in their nature, some of which are sufficiently pleaded, and others insufficiently set forth in the declaration.

The rule in such a case is, that the defendants can not properly demur to the whole declaration, but only to such part of it, as is insufficiently set forth, and to the residue of the declaration they should have pleaded. As an example of the application of this rule of pleading in the case of *Pinkney* v, *The Inhabitants af Rutland*, 2 Saund. 379, it was held, in an action of tort, when the plaintiff declared for taking his money, and also in the same count for taking certain goods, not alleging, that they were his goods, on general demurrer to the whole count the demurrer was overruled, because the count as to the taking of the money was good, though it was bad as to

the taking of the goods. The following cases show, that this rule of pleading is applicable to suits for libel. *McGregor* v. *Gregory*, 11 M. & W. 287; *Stile* v. *Nokes*, 7 East. 506; *Clarkson* v. *Lawson*, 6 Bing. 587; *Riggs* v. *Dennington*, 3 Johns. Cas. 198.

The defendants in error insist, that the whole declaration is good, and no part of it is liable to a demurrer, as the innuendo, that the defendants meant to charge the plaintiff with the crimes of embezzlement and obtaining money under false pretenses, though not proper, as the words published cannot bear this construction, yet these innuendoes might and should on demurrer be rejected as surplusage. And in support of this position they refer to *Adams* v. *Lawson*, 17 Gratt. 250.

That case decides, that, when the words charged to have been composed and published by the defendants are in themselves libelous, though there be no antecedent averments, whereby their meaning could be rendered still more libelous, and the innuendo improply enlarges the meaning of the words, on a demurrer the innuendo may be rejected as surplusage, and the declaration sustained. But in the case before us, we have seen, that the words, on which the innuendoes in the declaration are based, that criminal charges were meant, are not in themselves even libelous; and this decision in 17th Gratt. has therefore no application. It is therefore unnecessary to decide, whether this ruling in 17th Gratt. be correct or not. In support of it are cited only 4 Rob. Prac. 733 and cases cited. The cases there cited are *Thomas* v. *Croswell*, 7 Johns. 271; *Mix* v. *Woodward*, 12 Conn. 262; *Archbishop of Tuam* v. *Robeson*, 5 Bing. 17; *Harvey* v. *Friend*, 1 C. *Roberts* v. *Camden*, 9 East, 93; and *Croswell* v. *Weed*, & M. 11; *Wakely* v. *Healy*, 7 Man., Gr. & S. 591; 25 Wend. 621. In not one of these cases, except the last, was there a demurrer to the declaration; and in them all the court sustained the declaration after verdict. And in the last case, though there was a demurrer, yet

the innuendo was held to be warranted by the words, and not to be an improper enlargement of their meaning. There is an obvious difference between holding a declaration good after verdict, and on a demurrer; and it may well be questioned whether the decision in *Adams* v. *Lawson*, 17 Gratt. 250 is correct; but I express no opinion on this point; for independently of the principle held in that case, for the reasons I have stated above, the demurrer in the case before us was properly overruled, unless there can be found some other objection to the declaration than the improper extension of the meaning of the words, alleged to be libelous by a portion of the innuendoes in the declaration.

A much more important and difficult question however is presented by this declaration. Does any action for libel lie for words in a bill in chancery? and, if such action lies in any cause, under what circumstances does it lie? There are a large number of highly respectable authorities, who lay down the proposition broadly, that no action of libel can be maintained for any defamatory matter, contained in a pleading in a court having civil jurisdiction. And this is the conclusion reached by Townshend in his work on Slander and Libel, §221; and the same conclusion is reached by Starkie in his work on Slander and Libel, ch. 9, §203, p. 178. See Folkard's Starkie by Wood, top page 265.

With some qualifications this view was taken by the English courts at a very early period. Thus in *Buckley* v. *Wood*, 4th part of Coke's R. p. 14, it was resolved by the whole court, that for any matter contained in a bill, which was examinable by the court, in which the bill was filed, no action lies, because it was in due course of justice. The only qualification put on this broad doctrine, above laid down in this case, was that the bill must be filed in a court having jurisdiction of the subject. And even this qualification was at a very early day repudiated; and the doctrine laid down, that in no such case would an action lie, even when the court had

no jurisdiction. *Gwinne* v. *Poole,* 2 Lutw. 1,571; 1 Hawk. P. C. 194, §8. And in *Lake* v. *King,* 1. Saund. 131, the same was held to be the law, when the libelous words were contained in a petition to a committee of the House of Commons.

1878.
Special Term.

Johnson
v.
Brown *et al.*

Senator Clinton referring approvingly, to these old English authorities in the case of *Thorn* v. *Blanchard,* 5 Johns. 530, says : " But there is a certain class of cases, where no prosecution for a libel will lie, when the matter, contained in them, is false and scandalous;" and among the examples of this, which he gives, is that of false and scandalous matter contained " in a proceeding, in a regular course of justice. The freedom of enquiry and the danger of silencing enquiry and of affording impunity to guilt combine to shut the door against prosecutions for libel in such cases. See 2 Hawk. b. 1, c. 73, §8 ; 4 Bac. Abr., 452; Esp. Dig. 506; 4 Com. Dig. 717, c. 2." These views are sustained by the current of old English cases. See *Dowling* v. *Wenman,* 2 Show. 446 ; 3 Mod. 108; *Cox* v. *Smith,* 1 Lev. 119; *Brown* v. *Mitchel,* 2 Cro. (Ely) 500.

In the case of *Astley* v. *Young,* 2 Burr. 810, the libel complained of was contained in an affidavit made before a court. And it was held, no action of libel lay in such a case; and Lord Mansfield, delivering his opinion, gives this reason for such ruling : " There can be no scandal, if the allegation is material; and if not, the court, before whom the indignity is committed by *immaterial* scandal, may order satisfaction and expunge it out of the record, if it be upon the record."

In *Hodgson* v. *Scarlett,* 1 B. & A. 232, it was decided, that no action lay against a lawyer for words spoken in trying a case, if the words were *pertinent* to the matter being tried by the jury.

In the recent case of *Dawkins* v. *Lord Rokeby,* decided in 1875, 14 Eng. R. 127 (Law Reports 7 House of Lords 744), it was decided, that no action will lie against a witness, for what he says or writes, when giving evi-

dence either before a court of justice or before a military court of enquiry. Lord Penzance in his opinion gives these reasons for this judgment: " Whether the statements were in fact untrue, and whether they were dictated by malice, are, and always will be, open questions, about which opinions may differ, and which can only by resolved by the exercise of human judgment. And the real question is, whether it is proper, on the grounds of public policy, to remit such questions to the judgment of a jury. The reasons against doing so are simple and obvious. A witness may be utterly free from malice, and may yet in the eyes of a jury be open to that imputation ; or again the witness may be cleared by the jury of the imputation, and may yet have to encounter the expense and distress of a harassing litigation. With such possibilities hanging over his head a witness cannot be expected to speak with that free and open mind, which the administration of justice demands." He further says : " That if by any process of demonstration, free from the defects of human judgment, the untruth and malice could be set above or beyond all question or doubt, there might be ground for contending, that the law of the land should give damages to the injured man."

This reasoning of Lord Penzance applies with equal force to slanderous allegations contained in a bill in chancery. And from this review of the English authorities I may safely conclude, that in England the plaintiff in a chancery suit is not liable to an action of libel for any allegations in his bill, no matter how slanderous they may be, though they be both false and malicious, whether they be in reference to the defendant or to a stranger ; and this is so, though the court, in which the bill is filed, has no jurisdiction of the subject ; and that the fair inference from the English decisions is, that if the libelous matter is contained in the pleadings in a cause, the party making them would not be liable to suit for libel ; though if the libelous matter was in any other proceedings than the pleadings, the party publishing

them would be liable, if they were impertinent. In other words, that all allegations contained in a bill in chancery are absolutely privileged there.

In the United States the English rule has been generally modified to a greater or less extent. In *Ruohs* v. *Backer's next friend*, 6 Heisk. 395, the court reviewed the preceding decision in the Court of Appeals of Tennessee of *Davis* v. *McNeer*, 8 Humph. (Tenn), 408; *Lea* v. *White*, 4 Sneed 111, and decided, that although, if the allegations of a bill were libelous on the defendants in the suit, they are absolutely privileged, and can not therefore be the basis of an action of slander, yet, if these allegations are a libel on a stranger to the suit, they are only conditionally privileged, even though they be pertinent to the purposes of the suit; and are actionable, if they be made with malice, without probable cause, and not under circumstances, which would reasonably create the belief, that they were true. The court in this case seemed to think, that the question, whether the publication would or would not be privileged, would be affected by the question, whether the court had, or had not, juristion of the cause; as they examined this question and decided in that case, that the court had jurisdiction.

In the case of *Forbes* v. *Johnson & Co.*, 11 B. Mon. 48, the court say: "that the principle is well settled, and is indeed essential to the ends of justice, which demand, that there should be a free resort to judicial tribunals and to the remedies furnished by the courts, that words written or spoken in the courts of justice, and pertinent to legal proceedings within the jurisdiction of the tribunal, to which they are addressed, and to the remedy sought in that tribunal, are not actionable, though they be false, unless the proceedings were resorted to merely for the purpose of conveying the scandal, and as a cover for the malice of the party, and not in good faith, as a remedy for the assertion of a right, or the redress of a wrong." The case was a libel suit, brought by a defendant in a chancery suit, against the plaintiffs in the chancery

cause for a libel contained in the bill. The court sustained a demurrer to the declaration. It is obvious, that the allegations were pertinent to the object of the suit, though the court make no comment upon that; but they do argue, that the court had jurisdiction of the cause, which, we may therefore infer, they thought important.

In the case of *Torry* v. *Field*, 10 Vt. 353, the court decided, that it was a sufficient defense to any suit for libel to allege, that the supposed libel was contained in a bill in chancery, and that it was published in due course of judicial administration; and that, to constitute this defense, it was not necessary to allege, either that the court had jurisdiction, or that the libelous matter was pertinent to the objects of the chancery suit, or that it was true, or that there was probable cause to believe it to be true. The position is boldly taken, that the mere fact, that the libelous matter was contained in a bill in chancery, exempted the plaintiff in chancery from any suit for a libel; that the publication was, in other words, absolutely privileged. The court express the opinion, that this extends the privilege beyond reasonable limits; as a person ought not in such a bill to allege any facts, which are libelous, which he has no reason to believe to be true, and does not believe to be true, and which, if true, would have been impertinent to the cause. But they held, that the law had been settled otherwise, and should be followed. The libel suit was brought by the defendant in the chancery cause.

In the case of *Strauss* v. *Meyer*, 48 Ill. 386, the court sustained a demurrer to an action of libel, brought by a defendant in a chancery suit against the plaintiff for libelous charges against him, contained in the bill in chancery. The allegations in the bill were pertinent to the cause, though the court in sustaining the demurrer did not comment upon this.

*Lawson* v. *Hicks*, 38 Ala. 279, was an action of libel, brought by a plaintiff in a trespass suit against the defendant in such suit, for defamatory language in a cross-

1878
Special Term.

Johnson
v.
Brown *et al.*

interrogatory, propounded to a witness in a deposition, taken in the trespass suit.

The declaration alleged, that this defamatory matter was irrelevant to the issue, joined between the parties in the trespass suit, and was false and malicious, and was inserted in the cross-interrogatory without justifiable cause or excuse.

For plea the defendant alleged, that he filed this cross-interrogatory with a view to laying a foundation for impeaching the witness's honesty, and in good faith, believing he had a right so to do; and that the deposition was used on the trial of the cause. Another plea alleged, that the alleged libelous matter formed a part of a regular judicial proceeding in said suit of trespass.

The court held, that this declaration would have been good, had it alleged a want of reasonable or probable cause, instead of a want of "justifiable cause or excuse;" and that the first of the above pleas was good, and the other plea bad. The position taken being that there are two classes of privileged publications: one absolutely privileged; and the other conditionally. The one affords complete immunity from suit; the other removes the presumption of malice, and requires express malice to make it actionable. And that in the catalogue of absolute privileged communications are words, spoken or written by parties in the due course of legal proceedings, *which may be relevant.* But, if the words spoken or written are irrelevant, they belong to the class of conditionally privileged publications; and the party using them must not only believe them to be relevant; but there must also be reasonable and probable cause for so believing.

The distinction between absolutely and conditionally privileged communications is founded on the relevancy or irrelevancy of the libelous matter; it being insisted, that if irrelevant, the publication can never be regarded as absolutely privileged. And the court insists, that this distinction may fairly be deduced from the English

authorities; referring to *Brook* v. *Montague*, 3 Cro. (James) 90; *Hodgson* v. *Scarlett*, 1 B. & A. 32; *Flint* v. *Pike*, 4 B. & C. 473; *Farman* v. *Joes*, 5 B. & A. 642. At the same time admitting, that there are some expressions to be found in the English reports, which, it might be argued, repudiated this distinction, as Lord Mansfield's remarks in *Astley* v. *Young*, 2 Burr. 807.

In *Thorn* v. *Blanchard*, 5 Johns. 523, Chancellor Kent thought, there was a distinction between libelous matter in a petition to remove a public officer, and those contained in civil suits, as a bill in chancery; the broad doctrine of an absolute privilege not attaching to the first of these cases.

In the case of *Gilbert* v. *The People*, 1 Denio 41, the court decided, that libelous matter contained in a declaration was absolutely privileged, if pertinent to the action; and no libel suit could be based thereon; but if the libelous matter, though contained in a declaration, was irrelevant and gratuitous, it was not absolutely privileged; or, as we understand the opinion, privileged at all. As supporting these views the court refers to *Hastings* v. *Lush*, 22 Wend. 410; *Hodgson* v. *Scarlett*, 1 B. & A. 232; *Ring* v. *Wheeler*, 7 Cow. 725.

*Hastings* v. *Lush*, was a slander suit against a party for words used by him before a magistrate, while defending himself against a criminal charge, and this distinction between the relevancy and irrelevancy was taken, though it can hardly be cited, as sustaining the view, that if the matter spoken was irrelevant, it furnished no sort of protection to the party, though he believed it relevant.

In the case of *Suydam* v. *Moffat*, 1 Sandf. (N. Y.) 459, it was decided, that the libel suit being for defamatory matter, contained in an affidavit filed in a judicial proceeding, a plea, that the defendant had reasonable and probable cause for believing, and did believe, the matter stated to be true, and to be pertinent to the suit, was good as a plea in bar, and did not amount to the general issue. It is based on the view, that, if the mat-

ter be impertinent, it protects the party not absolutely, but conditionally. And the same principles were held in *Warner* v. *Paine*, 2 Sandf. (N. Y.) 195.

In *Cook* v. *Hill*, 3 Sandf. (N. Y.) 341, the court decided, that a memorial to the Postmaster-General, protesting against the execution of a contract with another upon the ground of fraud on his part and collusion with other bidders, was held to be a conditionally privileged communication; and that the burden of proving the want of probable cause was on the part of the plaintiff. The court held, that there were but two classes of absolutely privileged publications : First, proceedings in courts of justice, and secondly, in legislative proceedings ; and that they ought not to be extended.

In *Briggs* v. *Byrd*, 12 Ired. Law. (N. C.) 377, and *Marshall* v. *Gunter*, 6 Rich. (S. C.) 419, it was held, that a *bona fide* application to a magistrate, to issue a warrant for a larceny, is a conditionally privileged communication. No warrant in the case before the court was issued. It was mentioned to the magistrate, who did not then act upon it ; and he was never afterwards applied to for the warrant.

In *Shelfer* v. *Gooding*, 2 Jones (N. C.) 175, it was decided, that a master was not liable, in an action of slander, for words spoken while acting as counsel before a competent tribunal, provided the words used were material and pertinent to the matter in question. In this case the opinion of Justice Daniel in *White* v. *Nicholls*, 3 How. (U. S.) 266, is commented on and disapproved ; and the case of *Flint* v. *Pike*, 4 B. & C. 473 (10 Eng. C. L. R. 380) is cited approvingly ; and attention is called to the fact, that Holroyd, J., spoke in that case of a kind of action differing from an action of slander : " a special action on the case, in which it must be alleged in the declaration and proved at the trial, that the matter was spoken maliciously and without probable cause." And to this sort of action perhaps the court referred in a portion of its opinion in *Briggs* v. *Bird*, 12 Ired. (N.C.) 377.

In *Saunders* v. *Rollinson* it was decided, that the action of slander does not lie for a criminal charge, made by an affidavit before a magistrate ; an action on the case, for malicious prosecution, is the only remedy in such cases.   The court cites *Vanpee* v. *Lee*, 1 Hill 197, thus : "It is necessary to observe the distinct boundaries between actions.   The action of slander is a species of action on the case, differing in form, rules of evidence and pleading, from actions on the case for malicious prosecution, malicious arrest, or malicious suing out a search warrant."   They should not therefore be confounded.

In *Barnes* v. *McCrate*, 32 Me. 442, and in *Smith* v. *Howard*, 28 Iowa 51, it was decided, that a witness testifying in the regular course of judicial proceedings is not liable for answers to questions, if they are responsive to questions and pertinent; if not responsive or pertinent, he would be liable in an action of slander.

The case of *White* v. *Nicholls*, 3 How. 267, was an action of libel, brought by White against certain parties for defamatory words, contained in a petition, signed by the defendant, addressed to the President of the United States, asking the removal of White from the office of collector of customs for the District of Columbia.   The only plea was, not guilty.   The court below excluded this petition from the jury, and certain evidence, tending to show express malice.

This decision was reversed by the Supreme Court of the United States in an elaborate opinion delivered by Justice Daniel, in which he says: "The exceptions found in the treatises and decisions alluded to are such as the following : 1. Whenever the author and publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own right or interest, for example : words spoken in confidence and friendship, as a caution, or a letter written confidentially to a person, who employd A. as a solicitor, conveying charges

injurious to his professional character in the management of certain concerns, they had intrusted to him, and in which the writer of the letter was also interested.   2. Anything said or written by a master in giving the character of a servant, who had been in his employment.   3. Words used in the course of legal or judicial proceedings, however hard they may bear on the party, of whom they are used.   4. Publications duly made in the ordinary course of Parliamentary proceedings, as a petition printed and delivered to the members of a committee, appointed by the House of Commons to hear and examine grievances.

1878
Special Term.

Johnson
v.
Brown *et al.*

"These are acknowledged exceptions to the general rule.   But the term 'exceptions,' as applied to cases like these just enumerated, could never be interpreted, to mean, that there is a class of actors in transactions, placed above the cognizance of the law, absolved from the commands of justice.   It is difficult to conceive, how in society, where rights and duties are relative and mutual, there can be tolerated those who are privileged to do injury *legibus soluti*; and still more difficult to imagine, how such a privilege could be instituted, or tolerated, upon the principles of social good.

"The privilege spoken of in the books should, in our opinion, be taken with strong and well defined qualifications.   It properly signifies this, and nothing more: that the excepted instances shall so far change the ordinary rule, with respect to slanderous or libelous matter, as to remove the regular and usual presumption of malice, and to make it incumbent on the party complaining to show malice, either by the construction of the spoken or written matter, or by facts and circumstances connected with that matter, or in the situation of the parties, adequate to authorize the conclusion."

This much of Justice Daniel's opinion is cited approvingly by Judge Christian in delivering the opinion of the court in *Dillard* v. *Collins*, 25 Gratt. 351.

Justice Daniel concludes his opinion thus: "The in-

1878
Special Term.

Johnson
v.
Brown *et al.*

vestigation has conducted us to the following conclusions, which we propound as the law applicable thereto : 1. That every publication, either by writing, printing or pictures, which charges upon or imputes to any person, that which renders him liable to punishment, or is calculated to make him infamous, or odious, or ridiculous, is *prima facie*, a libel, and implies malice in the author or publisher towards the person, against whom such publication is made. Proof of malice therefore in the case just described can never be required of the party complaining, beyond the proof of the publication itself; justification, excuse, or extenuation, if either can be shown, must proceed from the defendant. 2. That the description of cases, recognized as privileged communications, must be understood as exceptions to this rule, and as being founded on some apparently recognized obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication, and therefore *prima facie* relieves it from the just implication, from which the general rule of law is deduced. The rule of evidence in such cases, is accordingly so changed, as to impose it on the plaintiff to remove those presumptions, flowing from the seeming obligations and situations of the parties, and to require of him to bring home to the defendant the existence of malice, as the true motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, however wicked, however express, under the protection of legal forms. We conclude then, that malice can be proved, though alleged to have existed in the proceedings before a court or legislative body, or any other tribunal or authority, although such court, legislative body, or other tribunal may have been the appropriate authority for redressing the grievance represented to it; and that proof of express malice, in any written publication, petition or proceeding, addressed to such tribunal will render that publication, petition or

proceeding libelous in its character and actionable, and will subject the author and publisher thereof to all the consequences of libel, and that falsehood and want of probable cause will always amount to proof of malice."

The case of *Dillard* v. *Collins*, 25 Gratt. 343, was an action for slander for these words: "He (meaning the plaintiff) and all his sons are horse thieves, and make their living by that means, and they frequently harbored that kind of men." This was spoken by a landlord to his tenant about a neighbor. It was held not to be a privileged communication; and the first part of Justice Daniel's opinion in *White* v. *Nicholls*, 3 How. 266, as above quoted, was cited by Judge Christian approvingly. In delivering the opining of the court he says: "I know of no treatise or decision, where this subject is treated with more clearness and precision than in the opinion of the Supreme Court of the United States, delivered by Justice Daniel in *White* v. *Nichols*."

It will be observed, that there was no occasion for the court in this case to consider, whether matters, contained in any document in the regular course of judicial proceedings, were, or were not, absolutely privileged, or to draw any nice distinctions on the subject, the case before them being clearly not even a conditionally privileged communication. It will also be observed, that Judge Christian's quotation from Justice Daniel does not include his distinct conclusion, that no judicial proceeding can be absolutely privileged; though what he does quote really does imply this, but implies it in such a manner, that it might have escaped observation.

The authorities cited by Justice Daniel to support his conclusions are *Cockayne* v. *Hodgkisson*, 5 Car. & P. 543; *Wright* v. *Woodgate*, 2 C. M. & R. 573; *Weatherstone* v. *Hawkins*, 1 T. R. 110; *Child* v. *Affleck*, 9. B & C. 406; *Johnson* v. *Evans*, 3 Esp. 32; *Hodgson* v. *Scarlett*, 1 B. & A. 247; *Curry* v. *Walter*, 1 B. & P. 525; *Rex* v. *Crecry*, 1 Md. St. 273; *Delegal* v. *Highly*, 3 Bing. N. C. 690; *Lewis* v. *Walter*, 4 B. & A. 605; *Flint* v.

*Pike*, 4 B. & A. 473; *Commonwealth* v. *Clapp*, 4 Mass. 163; and *Bodwell* v. *Osgood*, 3 Pick. (Mass.) 379.

These cases utterly fail to support Justice Daniel in the broad conclusion, which he has reached, that there is no case of an absolutely privileged communication, for which no action of slander or libel will lie, though uttered or published with express malice and without probable cause. There are loose expressions of opinion by judges, which might be so construed, if we did not take the pains to examine the cases, in which they were uttered, such as Judge Christian's above stated. But in none of the cases cited by Justice Daniel, and indeed in no case, that I have seen, has it been decided by the court, that there can be no case of absolutely privileged publication, for which no action of slander or libel can be brought, even though shown to be malicious; but on the contrary it has been often held, that such cases do exist, and very generally it has been admitted, that such was the law, by eminent jurists. There has, as I understand, never been a controversy, that could be called serious, with reference to the existence of such cases, till thus seriously questioned by Justice Daniel; the only real and substantial controversy theretofore being to the extent of this class of cases.

When I say, there has been no case, in which it ha been held, that a class of absolutely privileged communications does not exist, I do not even exclude the case of *White* v. *Nicholls*; for in that even the publication before the court did not, as all the authorities show, belong to a class, which has ever been held to be absolutely privileged. It was easy to show, that this publication was only conditionally privileged, as was decided by the Supreme Court, without going further and contending, that all other publications were only conditionally privileged.

A brief review of these cases will show, that they not only do not sustain, as *decisions*, the deduction drawn from them by Justice Daniel; but that it can not be in-

ferred, that any of the judges, who sat in these cases, entertain such views of the law as Justice Daniel.

It is true, that as Lord Mansfield held in *Weatherston* v. *Hawkins*, 1 T. R. 110, and Park, judge, in *Child* v. *Affleck*, 9 B. & C. 403, when a master scandalized his servant in giving him a character if express malice be shown, the master will not be excused. But this does not in the slightest degree tend to show, that these judges thought, that there would be no absolutely privileged communications; for no one ever contended, that this was a case, which belonged to that class. It is admitted by all, that this is only a conditionally privileged communication; and that therefore Lord Mansfield and Park, judge, were unquestionably right in expressing these views.

It is obvious too, that the controversy, which has existed in England, as to whether a true report, as to what passed in a court of justice, was, or was not, an absolutely privileged communication, throws no light on the question, whether the proceedings themselves in a court of justice are not thus absolutely privileged, there being obviously a great difference between holding allegations in a bill in chancery of a libelous character not actionable, and holding the publication of such bill in hand-bills and the circulation thereof is not actionable. Public policy might well require, that a plaintiff, in asserting his rights before the court, should be allowed to insert in his bill libelous matter, as otherwise he might fear to allege that, which was necessary to attain justice. And yet such public policy may not permit the publication in hand-bills of such a bill in chancery, and the circulation thereof; as the enforcement of the plaintiff's rights could not thereby be promoted.

The mere existence of such controversy, so far from showing the non-existence of a class of cases absolutely privileged, shows a strong disposition to extend the class to what might be regarded an unreasonable extent. The case therefore of *Curry* v. *Walter*, 1 Bos. & Pul. 525; *Rex*

1878
Special Term.

Johnson
v.
Brown *et al.*

v. *Fisher*, 2 Camp. 503 ; *Rex* v. *Creery*, 1 Md. St. 273 ; *Delegal* v. *Highly*, 3 Bing. N. C. 690 ; *Lewis* v. *Walter*, 4 B. & A. 605 ; and *Flint* v. *Pike*, 4 B. & A. 473, do not give the least countenance to this position of Justice Daniel.

The case of *Cockayne* v. *Hodgkisson*, 5 Car. & P. 543 (24 Eng. Com L. R. p. 448), was a suit for a libel, contained in a letter, written by a tenant to his land-lord at his request, informing him, that his gamekeeper sold game ; for which the gamekeeper brought an action of libel. It was held, that this was a conditionally privileged communication; and therefore such action could not be sustained, unless actual malice was proven. And the remarks of Parke, Baron, were evidently applicable to such a case only ; and it is clearly no authority for the deduction, that there are not communications or pub-lication, absolutely privileged. It is true, that Parke, Baron, in *Wright* v. *Woodgate*, 2 C. M. & R. 573, does use this language : " The proper meaning of a privileged communication is only this : that the occasion, on which a communication is made, refutes the inference *prima facie* arising from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove, that there was malice in fact." This is a proper definition of a con-ditionally privileged communication ; and when the char-acter of the case and point in controversy is considered, it seems to me obvious that Parke, Baron, intended this as the proper definition of a conditionally privileged communica-tion ; and that no fair deduction can be drawn from it, that there were no absolutely privileged communications or publications. The suit was based on no libelous matter, con-tained in any paper filed in a judicial proceeding, but in a private letter, written by the defendant about the plaintiff's character, he being the counsel in a suit, and was written to the client, after he had expressed to the defendant a wish to change his counsel. The real ques-tion in controversy being, whether in such case the letter itself should be submitted to the jury.

The case of *Johnson* v. *Evans*, 3 Esp. 32, referred to by Justice Daniel, is directly and irreconcilably opposed to his conclusion, that there can be no absolutely privileged publications. For the court held, that the slanderous words, used in that case, were used on an occasion absolutely privileged; and therefore no action could be brought for uttering them; and the plaintiff was non-suited. The slanderous words were used by the defendant in making a complaint to a constable with a view to the plaintiff's arrest; and though it was not followed out by her actual arrest, still it was held, no action lay therefor. Lord Eldon says: " Words used in the course of legal or judicial proceedings, however hard they may bear on the party, of whom they were used, were not such as could support an action of slander. It would be a matter of public inconvenience, and operate to deter persons from preferring their complaints against offenders, if the words spoken in giving charge of them, or preferring their complaint, should be deemed actionable."

The language of Parsons, Chief Justice, in the *Commonwealth* v. *Clapp*, 4 Mass. 169, quoted by Justice Daniel, simply shows, that he did not think, " an application to the Legislature to remove an unworthy officer was absolutely privileged ; but he does not intimate, that libelous matter, appearing in a regular judicial proceeding, was not absolutely privileged; nor can it be fairly inferred, that he so thought. The case before him was an indictment for publishing and posting an auctioneer as a liar, scoundrel, cheat and swindler."

The last case referred to by Justice Daniel, to support his view, *Bodwell* v. *Osgood*, 3 Pick. 379, was an action brought by a schoolmistress against an inhabitant of a school district, who wrote to the school committee, accusing her of a want of chastity. The court held the action should be sustained. The language of the court, quoted by Judge Daniel, when taken in connection with the case before them, does not, it seems to me, justify the inference drawn from it by Justice Daniel.

He admits, that *Lake* v. *King*, 1 Saund. 163, is directly and positively opposed to his view, that there can be no absolutely privileged publication. But he thinks, "the point ruled by that case is so much in conflict with the current of authorities going to maintain the position, that express malice cannot be shielded by any judicial form, that the weight and number of these authorities should not, it is thought, be controlled, or even destroyed, by the influence of a single and seemingly anomalous case."

We have reviewed all the authorities, cited by Justice Daniel, and have seen, that none of them are in conflict with the position, that express malice may be shielded by its being expressed in judicial proceedings in certain forms. On the contrary we have seen, that the decision of *Lake* v. *King*, 1 Saund. 163, is in accord with the preceding and subsequent English decisions. And the review of the American authorities will show, that the overwhelming weight of authority is opposed to Justice Daniel's idea, that there is no case, in which an action of slander or libel will not lie for libelous matter, spoken or written in the course of regular judicial proceedings. All these American authorities seem to me fully to establish a class of absolutely privileged publications. Nearly every American case, to which I have referred before, is either an express decision, that the case then under the consideration of the court belonged to this class of absolutely privileged communications, or is based on the assumption, that such a class exists, and that the particular case before them did not belong to that class.

Among a multitude of such cases the following may be referred to as cases, in which the court held, that the case then under their consideration belonged to the class of absolutely privileged communications: *Torrey* v. *Field*, 10 Vt. 353; *Warner* v. *Pain*, 2 Sandf. (N. Y.) 195; *Johnson* v. *Evans*, 3 Esp. 32; *Forbes* v. *Johnson*, &c., 11 B. Mon. 48; *Buckley* v. *Wood*, 4 Part Coke 14;

*Hoar* v. *Wood*, 3 Metc. (Mass.) 193 ; *Straus* v. *Meyer*, 48 Ill. 385 ; *Marsh* v. *Ellsworth*, 50 N. Y. 309.

The English authorities, we have seen, fully establish, that there is a class of absolutely privileged communications. In addition to the English cases, already referred to, we would refer to *Henderson* v. *Broomhead*, 4 H. & M., Ex. R. 568, in which it was held on a review of the English cases, that no action lies against a party, who in the course of a cause makes an affidavit to support a summons, taken out in such cause, which is scandalous, false and malicious, though the person scandalized, and who complains, is not a party to the cause ; and we must refer also to the case of *Revis* v. *Smith,* 18 C. B. 126 (E. C. L. R. vol. 86).

The authorities, both English and American, fully establish the position, that there is a class of absolutely privileged communications, in which actions of libel and slander will not lie, though the defendants be ever so guilty of express malice, and, that there should be such a class, is sustained by the soundest reasoning. It is absolutely essential to the ends of justice, that every person should have a right to bring an action in the courts for any cause of complaint ; and that whatever he may allege in his pleadings in the cause, should never subject him to an action of slander ; and that a like immunity should be extended to the defendant in any civil action. This is necessary to a thorough and searching investigation of the truth. Should the parties in a cause be placed in fear of suits for libel or slander for reflections, cast upon parties or others, and their defense to such suits depended either on the truth of what was said, or their ability to satisfy a jury, that it was not said with malice, the trial of civil causes would be far less likely to lead to correct results, than where such embarrassment was not felt. Perfect freedom to say in their pleadings, whatever the parties choose to bring to the consideration of the court or jury, tends obviously to promote the intelligent administration of justice. To

secure this is of much greater importance, than to prevent the evils arising from reflections on parties or others. Such reflections, if unfounded, produce no lasting injury generally, as their injustice will almost invariably be made apparent during the trial; and those only will be injured, who have resorted to their use without any substantial ground therefor. Besides, the proper exercise of the powers of the presiding judge will in most, if not in all, cases prevent abuse of this privilege.

Justice Daniel in *White* v. *Nicholls*, 3 How. (U. S.) 387, regards this holding, that there is a class of absolutely privileged communications, places a class of persons above the cognizance of law, and absolves them from the commands of justice. It to him appears difficult to conceive, how in society, where rights and duties are mutual, there can be tolerated those, who are privileged to do injury; and still more difficult to imagine, how such a privilege could be instituted or tolerated upon the principle of social good. Justice Daniel would be unquestionably right, if by any process of demonstration, free from the defects of human judgment, the untruth and malice could be set above and beyond all question or doubt. But this is not the state of things, under which this question of law has to be determined. Whether the statements were in fact untrue, and whether they were dictated by malice, are, and always will be, open questions, upon which opinions may differ, and which can only be resolved by the exercise of human judgment. The real question is not, whether " any one should be privileged to do injury," but whether it is proper on grounds of public policy to remit such a question in a particular class of cases to a jury. The reasons against doing so are simple and obvious. A party may be utterly free from malice, and may yet in the eyes of a jury be open to that imputation. Or again, the party may be cleared by the jury of the imputation, and may yet have to encounter the distress of harassing litiga-

tion. With such probabilities hanging over their heads the parties cannot be expected to speak with that freedom and open mind, which the administration of justice demands. This is the language of Lord Penzance in *Darkins* v. *Lord Rokeby*, Eng. R. vol. 14 p. 137 (Lord Reports 7 House of Lords 744) slightly modified ; and in my judgment it is a perfect answer to what seemed so clear to Justice Daniel.

The difficulty is not in determining, that there is a class of absolutely privileged publications, but in determining the proper limits of this class. This question I shall not attempt to solve. The authorities, I have cited, while they show clearly there is such a class, also show a great diversity of opinion as to the limits of this class. I shall confine my consideration to the question, whether pleadings in a civil suit belong to this class in all cases, or whether to bring them within this class it is necessary, that some other circumstance must co-exist, such as the right of the court to take jurisdiction of the case, in which the pleading is filed, or that the alleged libelous matter was relevant to the cause, or be honestly believed to be relevant to the cause, or that it was published in reference to a party to the cause and not in reference to a mere stranger, or whether the cause, in which such libelous matter appears in the pleadings, must not have been instituted *bona fide*, and not as a pretense to utter the libel.

The authorities very generally concur, that as a general rule the pleadings in any civil suit belong to the class of absolutely privileged publications, as will appear from the cases before cited. Indeed all, who admit that there is any such class, agree, that generally the pleadings in a civil suit belong to this class. The reasons, upon which the existence of such a class is asserted, apply with full force generally to the pleadings in a civil action. But whether, to entitle a party to a suit to be put in this class, it is not necessary, that he should do

more than show, that the libelous matter was published in a pleading in a civil suit, has been much discussed; and very different views have been entertained. It has frequently been said, that, to entitle him to be regarded as absolutely privileged, the court, in which he instituted the suit, must have jurisdiction.

This was so decided in *Buckley* v. *Wood*, 4th part of Coke's R. 14. The suit was brought for a libel, contained in a bill, filed in the Star Chamber by the defendant against the plaintiff, charging him with divers matters examinable in that court, and also that he was a maintainer of pirates and murderers, which was not examinable in that court. It was held by the court, " that for any matter contained in the bill, that was examinable in said court, no action lies, although the matter is merely false, because it was in course of justice. But for the words, not examinable in said court, an action on the case lies, for that cannot be in the course of justice; for the court has no power or jurisdiction to do that, which appertains to justice, nor to punish these offenses; and if such matters can be inserted in bill in so high and honorable a court, in great slander of the parties, and they cannot answer it to clear themselves, nor to have their actions, as well to clear themselves of the crimes, as to recover damages for the great injuries and wrongs done them, great injury will ensue; but the libel, without any remedy given the party, will remain always on record to his shame and infamy, which will be full of great inconvenience.' Also by law no murder or piracy can be tried on any bill exhibited in English; but the offender ought to be indicted for it, and thereupon to have his trial; and therefore he, who proposed this bill, has not only mistaken the proper court; but the manner and nature of exhibiting this bill (as to these clauses) has not any appearance of an ordinary suit in a court of justice; but if a man· bring an appeal of murder returnable in C. B., for that no action lies: for though the writ is not returnable before competent judges, who can

do justice, yet it is in the nature of a lawful suit, namely, by writ of appeal."

But the distinction taken between cases, where the court has and where it has not jurisdiction, was denied in the case of *Gwinne* v. *Pool*, 2 Lut. 1571, 1 Hawk. P. C. 194, §8; 1 Saund. 131 note 1. The reason assigned for disregarding this distinction is, that the mistake of the court, in which the suit is brought, is not the fault of the party, but is the fault of his counsel.

In this country there has been no decision, which I have seen, directly on this point; but very generally the courts have assumed, that, to entitle a party to claim libelous statements contained in pleadings in a civil action, to be absolutely privileged publications, the court, in which the pleading is filed, must have jurisdiction of the subject. Examples of this assumption are found in *Rhous* v. *Backer's next friend*, 6 Heisk. 395; *Forbes* v. *Johnson*, 11 B. Mon. 48; *Hill* v. *Miller*, 9 N. H. 140. In the case of *Torrey* v. *Field*, 10 Vt. 353, the court said, that it was not necessary, that the court should have jurisdiction, in order that a pleading filed in it should be an absolutely privileged publication. It seems to me, that the weight of authority, as well as reason, is in favor of holding, that no pleading filed in a court, which has no jurisdiction of the subject matter, ought to be regarded as an absolutely privileged communication. It does not seem to me necessary, that it should be so regarded in order to uphold the public policy, on which these absolutely privileged communications are based. The public policy only requires, that suitors may resort to the courts, established by law to hear their causes, and that, having so done, they may without fear of being sued for a libel, allege whatever they choose in support of their cause. But the public policy does not require, that parties should be permitted to resort to courts, not established by law to hear their causes, and in such courts publish libelous matters with absolute impunity. The judgment of such a

court is held to be an absolute nullity; and pleadings in it ought not to be absolutely privileged from being considered libelous.

The next inquiry is, to make out a case of an absolutely privileged communication, is it necessary that the pleading should be pertinent to the cause? The rule is laid down broadly in most of the English cases: that defamatory statements or publications, made in the regular course of judicial proceedings, cannot be the subject of an action by the party defamed; and this general statement of the law is not qualified by saying, that the statement or publication, to make it thus absolutely privileged, must be pertinent. But in these cases their was no discussion of the question, whether pertinency or impertinency was important. And in a case, where libelous words were used in an affidavit in a case, Lord Mansfield says: "There can be no scandal, if the allegation is material; and if not, the court, before whom the indignity is committed by immaterial scandal, may order satisfaction and expunge it out of the record, if it be upon the record." But in that case the scandalous allegations were material. *Astley* v. *Young*, 2 Burr. 811.

On the other hand there have been a number of English cases, in which, in laying down the rule with reference to counsel and proceedings in causes other than pleadings, the English courts have qualified the rule by saying, that the counsel or party is protected from a slander or libel suit for what he may say or write in a cause, if what he says is pertinent to the cause, *Brooke* v. *Montague*, 2 Cro. 90; *Hodgson* v. *Scarlett*. 1 B. & A. 232; *Flint* v. *Pike*, 4 B. &. C. 473; *Hoar* v. *Wood*, 3 Metc. (Mass.) 193. These English decisions have been generally followed in America. See *Mower* v. *Watson*, 11 Vt. 536; *Hastings* v. *Lusk*, 22 Wend. 410; *Ring* v. *Wheeler*, 7 Cow. 725; *Garr* v. *Seldon*, 4 Com. (N. Y.) 91; *Warner* v. *Paine*, 2 Sandf. (N. Y.) 195.

Though the rule has been by some courts further qualified by saying, though the defamatory matter was impertinent, yet it would be absolutely privileged, if the party show, that he had reasonable cause to believe, and did in fact believe, that the matter was true and pertinent. *Suydam* v. *Moffit*, 1 Sandf. (N. Y.) 458; *White* v. *Carrol*, 42 N. Y. 161; *Lee* v. *White*, 4 Sneed 111.

It has been questioned, whether in reference to the necessity of pertinency there be not a difference between the case of words used by an attorney in trying a case, on collateral proceedings in a cause, and allegations in a pleading in the cause. Townshend in his work on slander seems to have so considered; as he lays it down as a conclusion from the English cases, that no action lay for any defamatory matter contained in *a pleading*, whether pertinent or impertinent. See Townshend on Slander §221. This conclusion could only be based on the assumption, that the English decisions in reference to slanderous words spoken by counsel, or occurring in proceedings in a cause other than pleadings, had no application to libelous allegations in pleadings. American cases have however expressly applied the qualification to the pleadings in a cause, and say even in pleadings, that the libelous matter must be pertinent, to make it absolutely privileged. See *Gilbert* v. *The People*, 1 Denio 41; and the reasoning of other cases, where the qualifications of pertinency has been added, are equally applicable to pleadings as to any other proceedings; and there are many cases, in which the court by their language seem to assume, that to entitle a pleading to be regarded as an absolutely privileged publication it must be pertinent. See *Lawson* v. *Hicks*, 38 Ala. 279; *Forbes* v. *Johnson*, 11 B. Mon. 48; *Hill* v. *Miles*, 9 N. H. 14; *Marsh* v. *Elsworth et al*, 50 N. Y. 311; *Hoar* v. *Wood* 3 Metc. 193.

It seems to me, that the public policy, on which is based this absolute exemption from suit for libelous

1878
Special Term.

Johnson
v.
Brown *et al.*

matters contained in the proceedings, or spoken in a regular course of judicial proceedings, is not violated by the qualification, that matter complained of must be pertinent, even though it be contained in the pleadings in the cause; and that the rule, that it must be pertinent, which is applied to the words of counsel, or to other proceedings in a case, to make them absolutely privileged, should also on reason and authority be applied to the pleadings of parties. I feel, that in laying down this rule I do not unnecessarily increase unreasonably the fear of a libel suit, which might be entertained by a suitor in prosecuting his claim before a court, in as much as the question, whether the matter alleged in the pleading is or is not pertinent, is a question of law to be determined by the court, and not a question of fact to be decided by a jury.

We will now consider, whether a libelous allegation, pertinent to the cause pending in a court having jurisdiction of the cause, ceases to be an absolutely privileged publication, if it be made in reference to a stranger, not a party to the suit. This question has rarely been directly brought to the attention of the courts.

Syllabus 4

The English and American courts, as will be seen by reference to many of the authorities before cited, in laying down the rule, which is to determine, whether libelous matter appearing in the proceedings or conduct of a cause is, or is not, to be considered as absolutely privileged, appear to assume, that it in no manner depends upon, whether it relates to, or was uttered about, a stranger to the suit, or otherwise. While in many cases, as we have seen, qualifications are added in stating the rule, which exempts from libel or slander suits utterances in the prosecution regularly of a suit; yet the qualification, that they must not be uttered in reference to a stranger to the suit, is never added. There is nevertheless one American case, that decides, that if a libelous statement, made in the course of judicial proceedings, is made in re-

1878
Special Term.
Johnson
v.
Brown *et al.*

gard to a third person, such statement is not an absolutely privileged publication, but is only conditionally privileged, and is actionable, if made with malice without probable cause, and under such circumstances, as would not reasonably create the belief, that they were true. *Ruohs* v. *Backer's next friend*, 6 Heisk. 395.

The court below held, that, if the slanderous allegations in the pleadings were made with reference to a person not a party to the suit, though pertinent, they were not even conditionally privileged. The appellate court reversed this decision, and held, that these allegations were conditionally privileged, but were not absolutely privileged. Judge Nelson in delivering the opinion of the court admits the rule, that libelous allegations, made with reference to the parties in the pleadings in the cause, are absolutely privileged, and he further says: "That although there are authorities, which would perhaps sustain this pleading, as falling within the definition of absolutely privileged communications, this court is of opinion, that a distinction should be taken between statements, made in the course of judicial proceedings relative to the parties thereto and those, which relate to strangers to the record." He cites however no authority to sustain this distinction; and I know of none, nor of any dictum of a judge, which countenances such a distinction.

In the case of *Henderson* v. *Broomhead*, 4 H. & N. (Exchequer R.) 568, it was decided, that no action lies against a party, who in the course of a cause makes an affidavit to support a summons, taken out in the cause, which is scandalous, false and malicious, *though the person scandalized, and who complains, is not a party to the cause.* The case was ably and fully argued on behalf of the plaintiff in the libel suit; but the court declined to hear argument on behalf of the defendant. They decided unanimously in his favor. They made no distinction between a case, where the libelous matter related

to a third person, and where it related to a party to the suit; and do not seem to regard the supposed distinction, as worthy of consideration, as it is not even alluded to in any one of the opinions of the four judges, who pronounced opinions in the cause.

In my judgment no such distinction can be made, without disregarding entirely the public policy, on which the rule, that slanderous allegations made in the pleadings in a judicial tribunal should be held as absolutely privileged publications, is based, and bringing about all the evils, such rule was intended to provide against.

Nothing can better show my views of the great mischief, which must arise, if such a distinction is recognized, than the very case, in which this distinction was taken. Joseph Ruohs as next friend of Barbane Maura and Anna Maura, minors, filed a petition in the county court of Hamilton county, which had jurisdiction of the subject, which petition was sworn to by him. In this petition he asked the removal of their guardian, and, among the causes assigned for the removal, the petition alleged, " that the guardian has had in his family a girl, who is now over sixteen years of age, who came to live with him at about the age of thirteen years, and has remained in his family ever since. Her reputation is ruined; and she is now an example of shame and prostitution."

This girl Catharine Backer by her next friend sued Ruohs this for libel. The court below held, that this was not even a conditionally privileged publication, and so instructed the jury; and they found a verdict for the plaintiff. The Court of Appeals set aside this verdict, and held, these allegations in the petition are *prima facie* privileged, being pertinent to the enquiry, sought to be had in the county court; but that, as the plaintiff in the libel suit was a stranger to the record, such of the allegations in the petition, as related to her, are only conditionally privileged; and it must be left to a jury

to determine, whether these allegations were made in good faith, with probable cause, and under such circumstances, as reasonably created a belief in the mind of Ruohs, that they were true; and the liabilitity of the plaintiff must depend on the finding of the jury on these questions.

Judge Nelson in his opinion says: "If a guardian may be removed, because his domestic associations are such, as tend to the corruption and contamination of his ward, upon what principle is it, that the person seeking his removal may not even name his associates, and cause their character to be enquired into? There are many cases, in which the rights and character of persons, who are not parties to a suit, become collaterally the subject of enquiry; and the right in this case to make such enquiry was unquestionable."

With these as premises I can not see, how the court reached the conclusion, it did, without disregarding entirely the public policy, which would have prevented the plaintiff from bringing a libei suit, had she been a party to the original proceedings. Would not the conclusion reached by the court effectually deter in most cases any next friend of a female ward from instituting proceedings in such a case to remove a guardian? Would a next friend ordinarily, though satisfied, that his relative, a female ward, was being brought up under influences tending directly to her contamination and ruin, be willing to institute such proceedings to remove a guardian, when, from the very nature of the case, he must be aware of the great difficulty of proving the matters charged, and when by this decision he knows, that if he fails, he will be liable to a most harassing suit, in which he must be heavily mulcted, unless he can satisfy a jury, that he acted in good faith, with probable cause, and under such circumstances, as ought to have created a belief in his mind, that the facts, which he would allege, were true.

This may be all so ; but it must always be very uncertain, what conclusion a jury may draw. This great risk most men would not voluntarily run, even to protect their relative, the ward. They would willingly risk the costs of the proceedings to remove the guardian ; but the risk of being themselves ruined by a libel suit they would not ordinarily run. The result would be, that female wards, brought up under such contaminating influences, would remain in their perilous condition, and be utterly ruined. This would be a great public evil, far out-weighing the hardship, which in a particular case might arise from prohibiting the institution of such a suit for libel.

In my judgment pertinent allegations in the pleadings in a judicial proceeding, whether they relate to parties to the suit, or strangers, ought upon principles of public policy to be held as absolutely privileged publications, on which no action of libel can be based.

The only other qualification of the rule that libelous allegations, which are pertinent, contained in the pleadings in proceedings in the regular course of justice in a court of competent jurisdiction, are absolutely privileged publications, which has been suggested, is whether such allegations are not actionable, if the proceedings should have been resorted to merely for the purpose of conveying the scandal, and as a cover for the malice of the party, and not in good faith for the assertion of a right, or the redress of a wrong.

Syllabus 4

It has been frequently stated, that no action of libel would lie, when the libelous allegations were in the pleadings in a cause, brought with such motives; but these statements have been made in cases, in which this question was not submitted to the court for decision, as in the cases of *Forbes* v. *Johnson*, &c., 11 B. Mon. 48 ; *Hill* v. *Miles*, 9 N. H. 14 ; *Suydam* v. *Moffat*, 1 Sandf. (N.Y.) 463 ; and as it may be questioned, whether the law, as thus stated, is not a dangerous innovation upon the

principle, that libelous statements contained in pleadings
are absolutely privileged publications, and as the question is not presented by the record before us, I deem it proper to express no opinion on this subject. It is a question of great importance, and deserves, as it will receive, careful examination, when fairly presented. Till some case is brought before us, requiring us to decide this point, I deem it best to say nothing upon the subject.

If in a pleading a party has inserted scandalous matter, which is impertinent to the cause, he is not, as we have seen, absolutely protected from a libel suit, but he is so protected in such suit, if he shows, that he had reasonable cause for believing, and did actually believe, that the allegations were pertinent to the cause. Proof of this would completely and conclusively rebut the charge of malice; and he need not go further and prove, that he was not actuated by malice.

The Chancellor in *Hasting* v. *Lush*, 22 Wend. 423, says: " If I am right in supposing, that a party is not answerable for words innocently spoken by him in conducting his defense in a judicial proceeding, and without malice, although they may not have been strictly pertinent perhaps, a replication, merely denying the pertinency of the words, would not have been a sufficient answer to the plea." He then shows, that it might perhaps be necessary to go further, and deny the malicious intent; but, in his opinion, if there had been any error in this respect in the case before him, it had been cured by the statute of jeofails after verdict.

In the case of *Suydam* v. *Moffat*, 1 Sandf. (N. Y.) there was no express negation of malice, though it was said in the plea, that he had reasonable and probable cause for believing, and did in fact believe, the allegations were true, and were pertinent and relevant to the suit. And the court, in speaking of the subject, does not seem to regard the statement in the plea, that the allegations

were believed to be true, as necessary. They say : "The jury in such a case must be satisfied, that there was actual malice on the part of the defendant, and that they were published for the mere purpose of defaming the plaintiff. The malicious motive may be inferred from the palpable irrelevancy of the words to the subject in controversy; but the party may rebut the inference resulting from an apparent irrelevancy, if he can satisfy the jury, that he had reasonable cause for believing, and did actually believe, that they were pertinent and relevant to the subject matter of the suit, in which they were used.

As I understand the court, the satisfying of the jury, that he had reasonable cause for believing, and did actually believe, that the slanderous allegations were pertinent, rebuts the presumption, which the palpable irrelevancy of the words would raise; and such proof would put the party in the same situation, as if the words used had been really relevant; and if so, there can be no necessity or propriety in going further and alleging, that the allegations were believed to be true, or were made without malice, or in introducing any proof to establish these facts. Proof of express malice might be introduced by the plaintiff, as evidence tending to show, where the slanderous allegations were irrelevant, that they were published for the mere purpose of defaming the plaintiff, and were not believed by the defendant to be pertinent to the suit; but it could only be introduced for that purpose; and if it failed to convince the jury of this, they would have to find for the defendant, though they believed, that there was actual malice on his part. I have before shown, there is highly respectable authority, who go further and hold, that irrelevant allegations in pleading are in all cases absolutely privileged; but this is going too far, and the case of *Suydam* v. *Moffat* goes as far as, it seems to me, public policy requires.

We will now apply these principles of law to the case
before us. The declaration on its face alleged, that the libelous matter complained of was contained in a bill, filed by the defendants in the circuit court of Tyler county. There was no allegation, that the court did not have jurisdiction of the cause; but there is an allegation in the declaration, that the libelous matter was not material or pertinent to the subject matter of the bill. Without this allegation, on the principle I have laid down, the court ought to have sustained a demurrer to it. See *Forbes* v. *Johnson, &c.,* 11 B. Mon. 48. A plea therefore denying the truth of this allegation, and alleging, that this libelous matter was material and pertinent to the case, sought to be made in the bill, would have been a good plea; but, as this issue is one of law, and must be tried by the court on an inspection of the record in the chancery cause, the proper conclusion of such a plea would be: "And this the said defendants are ready to verify by the said record. Whereupon they pray judgment, if the said plaintiff ought to have or maintain his aforesaid action against them."

This defense is attempted to be set up in the first second and fifth pleas; but said pleas contain in them much useless and unnecessary matter, such as; "that the court had jurisdiction thereof." This was unnecessary to be stated in the plea, because the declaration not having alleged, that the court did not have jurisdiction, and the general rule being, that allegations contained in the pleadings in a cause cannot be the subject of a libel suit, if the plaintiff would except himself from the operations of this general rule, he must in his pleadings allege the facts, which bring him within some exception, such as: that the court did not have jurisdiction of the cause. But even had this been alleged in the declaration, it would not have been proper to deny it in this plea, as such denial renders the. plea double. If it had been alleged in the declaration, it should have been

denied in a distinct plea, containing a denial of no other material matter stated in the declaration.

Pleas numbered one, two and five, also contain the unnecessary allegations in the fifth plea, that the bill was filed without malice, and in good faith, and in the first and second pleas, that the publications in said pleas were made without malice. No allegation had been made in the declaration, that they had been filed "merely for the purpose of conveying the scandal, and as a cover of the malice of the defendants, and not in good faith for the assertion of their rights or redress of their wrongs." As said before, it is questionable, whether such an allegation in the declaration would have changed in any manner the plaintiff's rights, and therefore ought not to have been regarded as surplusage and immaterial ; but if it could be regarded as material, it was the duty of the plaintiff, if he relied upon such matter, to have asserted the reverse of it in his declaration ; and not being alleged in the declaration, it was not necessary or proper for the defendant to deny it by plea, much less to allege the opposite in pleas, which set up another defense.

In the case of *Forbes* v. *Johnson, &c.* 11 B. Mon. 52, it was expressly decided, that if such matter is relied on by the plaintiff, as taking his case out of the general rule, that allegations made in a bill cannot be the subject of a libel suit, he must allege such matter in his declaration; otherwise it will be disregarded. The pleas, numbered two and five, also conclude improperly with a simple verification, instead of with a verification by the record. They should therefore have been rejected ; but the failure of the court to reject them might not have been ground for reversal of the judgment, had the verdict been for the defendants.

I have assumed that the question, whether these libelous matters in the bill were or were not pertinent, is a question of law, to be decided by the court on an inspection of the chancery record, and not a question of fact,

to be decided by a jury. That I am right in thus assuming will be shown, when I come to consider the instructions given by the court to the jury. All the other special pleas, which were received by the court, contain one or more of these, the unnecessary allegations, contained in the first, second and fifth plea; and they contain no other allegation; and should therefore all of them have been rejected by the court. Though the failure to reject them might not have been a ground for reversal, had the verdict been for defendants.

1878.
Special Term.
Johnson
v.
Brown et al.

The defense, attempted to be set up by the seventh and eighth special pleas rejected by the court, is, "that the defendants had reasonable cause for believing, and did actually believe, that the alleged libelous matter was pertinent and relevant to the case, sought to be made in the bill, and the relief therein prayed. This, as we have seen, was a good defense, had it been properly pleaded. But the allegation in the seventh plea, that the defendants were advised and believed, that these libelous allegations were material and pertinent, can hardly be regarded as setting up properly this defense. The allegations in the eighth plea are more nearly right, but were still insufficient to set up properly the defense. The allegation in a plea, setting up this defense, should be: "that the said defendants had reasonable cause for believing, and did actually believe, that the alleged libelous matters were pertinent and relevant to the case, sought to be made in the bill, and the relief therein prayed." See *Suydam* v. *Moffat*, 1 Sandf. 463.

Syllabus 7

There is no necessity, as we have seen, that such plea should allege, that the defendants believed, or had cause to believe, these allegations true, as is done in the eighth special plea, nor is their any necessity in such plea to allege, that the plaintiff was not actuated by malice in making these allegations. The plea should conclude, as these pleas did, with a verification; for the question, whether the defendants had reasonable cause

for believing, and did actually believe, the alleged libelous matters to be pertinent in the chancery cause, is a question of fact, to be decided by a jury. The court did not err in refusing to receive these pleas in the form, in which they were presented; but they ought to have been received, had they been properly written, as above shown.

The three instructions, given to the jury by the court at the instance of the plaintiff, are all erroneous.

The first of these instructions is in substance, that if the jury believe from the evidence, that the libelous allegations were not pertinent and material to the object of the bill, and unnecessary therefor, then the publication of those allegations was not privileged; and it furnishes no protection to the defendants, but the law presumes malice in the defendants, and the jury must find for the plaintiff. There are two errors in this instruction : first, the question, whether those libelous allegations in the bill were pertinent, was a question of law, which should have been decided by the court; and secondly, in the supposed case, the law did not presume malice in the defendants, but the reverse. It would seem to be a self-evident proposition, that whether certain allegations in a bill in chancery submitted in evidence are, or are not, material and pertinent to the object of a bill, is a pure question of law, and not a question of fact, to be decided by a jury; but the counsel for the appellees, while seeming to admit this self-evident proposition, contends that in a libel suit such a question ought nevertheless to be submitted to a jury, and not decided by the court. To sustain this position they refer to *Parmiter* v. *Coupland,* &c., 6 M. & W. 105.

The decision in that case was, that "in an action for libel the judge is not bound to state to the jury, as a matter of law, whether the publication be a libel or not; but the proper course is for him to define, what is a libel in point of law, and to leave it to the jury to say,

whether the publication in question falls within that definition; and as incidental to that, whether it is calculated to injure the character of the plaintiff." The ground of the decision is, "that whether the libel is the subject of a criminal or civil prosecution, the court should state, what constitutes a libel; and the jury say, whether the facts necessary to constitute the offense, as defined by the court, are proved to their satisfaction. A publication without justification, or lawful excuse, which is calculated to injure the reputation of another, is a libel; but whether the particular publication is of that character, and would be likely to produce that effect, is a question, upon which a jury is to exercise their judgment, and pronounce their opinion, as a question of fact." In these views Chancellor Kent concurred in a criminal prosecution for libel in the case of *People* v. *Crosswell*, 3 Johns. Cas. 337, though the court was in that case divided in opinion.

The basis of Chancellor Kent's reasoning is: that the extent of the publication is a fact, which cannot be properly taken from a jury by the court, and the tendency of the publication also is, what constitutes it a libel, and not the mere publication; and this tendency is a question of fact, to be decided by a jury. This question has been, as may be seen from this case, a source of long and bitter controversy; but to my mind it is foreign to the point before us. A court may not be able to instruct a jury to find a particular publication to be a libel, but may be required to instruct the jury, that a publication, calculated to produce certain results, is a libel, and leave it to the jury as a matter of fact to say, whether the particular publication is of that character.

But I do not see what bearing this has on the right and duty of the court to instruct the jury in a libel suit, as in all other cases civil or criminal, upon pure questions of law, which arise in the case. And this very question, whether a particular statement is material in a

judicial proceeding, has been held to be a question, on which the court is bound to instruct the jury even in criminal cases. Thus in *The State* v. *Williams,* 30 Mo. 365, a conviction for perjury was set aside, because the court, as in the case before us, left it to a jury, whether the facts, sworn to by the accused, were material in the the judicial proceedings, instead of determining this question itself.

It is said too, that the whole question of privileged communications should be left to the jury, and that it cannot be settled on a demurrer; and *Cooper* v. *Stone.* 24 Wend 442, is referred to as sustaining this position. It is true the court held, that in that case this question could not be settled by a demurrer; and they could not have held otherwise. It was a suit for a libel, based on a published criticism of a book and of its author. Whether it was a privileged publication was, in such a case, clearly not a mere law question, to be determined by the court on demurrer, but was a question of fact, to be determined by a jury. Many cases however may be cited, in which the court has, on a demurrer to a declaration, or on an order of non-suit, determined, that the cause of action was based on an absolutely privileged communication, and sustained the demurrer, and dismissed the suit, or ordered a new suit. See *Forbes* v. *Johnson, &c.,* 11 B. Mon.; *Straus* v. *Meyer,* 48 Ill. 385; *Garr* v. *Seldon,* 4 Coms. 91; *Hodson* v. *Scarlett,* 1 B. & A, 233; *Johnson* v. *Evans,* 3 Esp. 33.

In the case of *Garr* v. *Selden* the court on demurrer decided, that the slanderous allegation complained of was pertinent in the judicial proceeding, and therefore absolutely privileged, though the declaration alleged, it was not pertinent. The case of *Parmeter* v. *Coupland,* 6 M. & W. 105, *is* far stronger against the defendant in error than in his favor, for if we could construe this as authority, as prohibiting the court from deciding whether the libelous allegations in the bill were pertinent, it

1878.
Special Term.
Johnson
v.
Brown *et al.*

would follow of course, that the court could not do, what is much more questionable according to this authority, that is, decide, that the particular allegations in the bill were libelous. And yet this is done in this first instruction, in effect, by directing them, if the publishing of it was proved, and it was immaterial, to find for the plaintiff.

The latter part of the instruction, that the law presumes malice in the defendants, if the allegations contained in this bill are immaterial, is contrary to the law, as stated heretofore in this opinion, and to all the authorities; for all admit, that an immaterial allegation in a bill is not an absolutely privileged publication; it is at most a conditionally privileged publication; and, if so, malice is never presumed, but must be proved by the plaintiff.

The second and third instructions, given at the instance of the plaintiff, in effect instruct the jury, that though the libelous allegations in the bill were pertinent, yet, if they were inserted in the bill maliciously, they must find for the plaintiff. This, from what I have before stated as the law, is obviously wrong. For if these allegations were pertinent, whether made about a party to the bill or a stranger, they can not be the basis of any libel suit.

The second and fourth instructions, asked by the defendants, and refused by the court, ought to have been slightly modified by the court, and then given to the jury, provided the court could have held the allegation impertinent. The law, as I have stated it, would require these instructions to be given, under these circumstances, in this form: "That if the jury believe from the evidence, that the libelous matter, complained of by the plaintiff, was composed and published only in the due course of judicial procedure by the defendants, and that said defendants had reasonable cause for believing, and did actually believe, that the said matter was pertinent

to the case, they sought to make, and the relief they prayed for, then the jury will find for the defendants;" and : "If the jury believe from the evidence, that the libelous matter, complained of by the plaintiff, was regularly composed and published by the defendants in the due course of judicial procedure, they will find for the defendants, unless they are satisfied from the evidence, that such composing and publishing was done by the defendants with actual malice towards the plaintiff."

It only remains to determine, whether the court ought not to have granted a new trial on the merits of the case. The evidence being all certified to this court, and the plea of not guilty having been put in by the defendants, it is unimportant in reviewing this case, whether the court admitted special pleas, which it ought not, because they were immaterial, or because they concluded improperly, or whether they rejected pleas, that ought to have been admitted, if all the defenses sought to have been made, could have been made under the general issue, and the evidence supports this plea. All the defenses, made or desired to be made under the rejected pleas, might have been made under the general issue. See *Hodgson* v. *Scarlett*, 1 B. & A. 232; *Hastings* v. *Lusk*, 22 Wend., 423; *Lillie* v. *Price*, 5 Ad. & E. 645, (31 Eng. C. L. R. 44); *Bradley* v. *Heath*, 12 Pick. (Mass.) 163; *White* v. *Nicholls et al.*, 3 How. (U. S.) 266; *Torrey* v. *Field*, 10 Vt. 353.

It is not necessary, in determining, whether a new trial ought to have been awarded, to examine the evidence in detail, or to consider, whether any of the evidence, admitted by the court and objected to at the time, ought to have been received.

According to my view of the case, the bill in chancery of the defendants against the People's Manufacturing Company, set forth at length in the statement of this case preceding this opinion, and which was offered in evidence by the plaintiff, conclusively establishes, that the

verdict of the jury should have been for the defendants. This bill contains all the allegations, complained of as libelous in the declaration; and the evidence shows, that the filing of this bill was the only publication of these libelous statements. According to the law, as stated heretofore in this opinion, if these libelous statements were pertinent to the objects sought in this bill, the verdict of the jury should have been for the defend- ants. An examination of the bill will show, that these statements are pertinent; and if so, any further examination of the evidence would be useless.

In the language of the Chancellor in *Hawley* v. *Wolverton*, 5 Paige 522, "In examining the question, whether an allegation or statement in the bill is relevant or pertinent, it must be recollected, that a bill in chancery is not only a pleading, for the purpose of bringing before the court and putting in issue the material allegations and charges, upon which the complainant's right to relief rests, as in a declaration in a suit at law, but it is also, in most cases, an examination of the defendant on oath, for the purpose of obtaining evidence to establish the complainant's case, or to counter-prove or destroy the defense, which may be set up by such defendant in his answer. The complainant may therefore state any matter of evidence in the bill, or any collateral fact, the admission of which by the defendant may be material in establishing the general allegations of the bill as a pleading, or in ascertaining or determining the nature and extent, or the kind of relief, to which the complainant may be entitled, consistently with the case, made by the bill; or which may legally influence the court in determing the question of costs. And where any allegation or statement, contained in the bill, may thus affect the decision of the cause, if admitted by the defendant or established by proof, it is relevant and cannot be excepted to as impertinent."

Although the answer of the defendant is no longer

evidence in this state, by the provisions of our statute law, still the rule, laid down above, as to what is relevant or pertinent in a bill, remains unchanged. For though the answer is not evidence, yet every fact, distinctly and positively alleged in the bill and not denied in the answer, is treated as an established fact in the trial of the case, by the provisions of our statute law ; and the plaintiff may therefore properly allege in his bill any collateral fact, the admission of which by the defendant in his answer, or failure to controvert in his answer, would be material in ascertaining and determining the nature and extent and kind of relief, to which the plaintiff may be entitled consistently with the case, made by the bill ; for the admission of such collateral facts by the answer, either directly or by omitting to answer as to them, would save the plaintiff the cost and expense of proving them. The due investigation of the merits of a cause require, that the plaintiff, if he keeps within the rule as above laid down, shall be permitted to make charges, however harsh or gross they may be, and that though they effect the character of persons not parties to the suit, and if pertinent in the sense above stated, such charges can never be regarded as scandalous. *Fenhoulte* v. *Passavant*, 2 Ves. Sr. 24; *Lord St. John* v. *Lady St. John*, 11 Ves. Jr. 539.

In the last case Lady St. John brought a suit to have surrendered to her by Lord St. John certain marriage articles, which provided, that, if the parties should again separate, former articles of separation, which had been made, should again be revived. The answer alleged scandalous matter relative to Lady St. John, which happened before the first separation, which was asked to be stricken out as impertinent ; but the court refused to strike them out, saying : " It was to be lamented, that all this conduct is brought upon the record ; but the suit involves the consideration, not only whether the deed is void, but whether this court is to do nothing with reference to the conduct of the parties, the matter is not ir-

1878
Special Term.

Johnson
v.
Brown *et al.*

relevant, as it may have an influence on the suit, attending to the nature of it; and if relevant, whatever be its nature, it cannot be held scandalous."

The court may at any time have stricken from the record scandalous matter, though it refer to a stranger to the suit, either at the instance of such stranger, or without any motion by any one. The court of its own motion, in aid of public morals, is bound not to permit its records to be made the means of perpetrating libelous and malignant slanders, but should interfere to suppress such indecencies, which may stain the reputation and wound the feelings of the parties, their relatives and friends. *Coffin* v. *Cooper*, 6 Ves. 513.

In considering the question, whether the libelous matters, contained in the bill in chancery, referred to in the declaration in this case, are pertinent, we must look into this bill and see what are its objects, so that we may determine, what matters could be considered by the chancery court in determining what should be done in the cause by the court.

Syllabus 3

The chancery suit was instituted under the 57th section of chapter 53 of the Code of West Virginia, page 403, by stockholders of the People's Manufacturing Company, representing more than one-third of the interest in this corporation, who desired to wind up its affairs; and its object was to obtain a decree dissolving the corporation. This statute conferred on a minority in interest of the stockholders a right, which they did not, until the passage of this statute, possess, and was intended to protect them against further abuse by the majority in interest of the stockholders of the powers, conferred on them, to control the affairs of the corporation. The relief asked by the terms of this statute was not to be granted as a matter of course, but was only to be granted, if sufficient cause was shown for granting this relief.

This sufficient cause could generally be shown to exist only by establishing, that the majority in interest of

the stockholders had theretofore so mismanaged the affairs of the corporation, as to justify the conclusion, that, with a proper regard to the interest of the minority in interest of the stockholders, it would be improper and unsafe to permit such majority to control longer the affairs of the corporation, and that it should therefore be dissolved.

The very character of the suit therefore made it pertinent to enquire fully into the manner, in which the affairs of the corporation had been theretofore managed. And it would therefore be entirely pertinent in such a suit to allege in the bill, and prove that a majority in interest of the stockholders had conspired to defraud the minority in interest of the stockholders, and to divert the means and credit of the corporation to their own use, and that under the management of this majority in interest a superintendent had been formerly employed, who had acted in a grossly fraudulent manner; and to specify particular acts of such superintendent, as showing the mismanagement of the majority in interest in employing such a superintendent. And this would be much more pertinent, if such superintendent was a stockholder co-operating with the majority in interest of the stockholders; and still more so, if this majority in interest were all closely related. Nor would the fact, that such former superintendent was not a formal party to the suit, in any manner affect the pertinency of such allegations. If the proof of such allegations would tend to establish mismanagement theretofore by a majority in interest of the stockholders, and thus tend to show, that the court ought to dissolve the corporation to prevent such mismanagement in future, such proof, or such allegations in the bill, must be regarded as pertinent. And if so, it matters not how gross or harsh they may be, they can not be regarded as scandalous.

Even had the former superintendent been no stockholder, but a mere stranger, the assault on his character

would have been still pertinent ; for his bad character would tend to show, that the majority in interest of the stockholders, who employed such a man as their superintendent, were themselves unfit to be permitted to continue the control of the corporation, and it should therefore be dissolved. There is no principle which forbids proof to be taken in a cause, which is pertinent to the matter in controversy, because it assails the character or conduct of third persons incidentally. This is constantly occurring ; and whatever may be properly proved in a cause may be alleged in a bill, without its being impertinent. As an illustration of a pertinent allegation in a bill, which assailed the character of a third party, we may refer to the case of *Ruoh's* v. *Backer's next friend*, 6 Heisk. 395. In the bill referred to in that case, a third person, a young lady, was charged to be a common prostitute, and yet the court held, that this allegation was pertinent.

In the case before us the allegations in the bill, on which this libel suit was based, are : " The said plaintiffs further say, that said Isaac H., Daniel D. and Samuel Johnson, have been, and are, conspiring to defraud the other stockholders of said company, to divert the means and credit of said company to their individual use and ends, and against the interests and welfare of the other stockholders in the company ; that the said Isaac H. Johnson was through his own and brothers' influence placed and retained in the general management of said company during the years 1871, 1872, and 1873, for their own private and individual gain, and not the company's, that especially during the year 1873 did the said Isaac H. Johnson use and employ the goods, money, means and credit of said company for his own and his brothers' private use, business and benefit ; that he took the goods and money of the said company to pay his own employes ; that he borrowed money, and used it in his own business, and gave the company's notes therefor, as they are informed and be-

lieve, and therefore charge; that he and his wife purchased goods, wares and merchandise of divers persons and at various times during the years 1871, 1872, and especially during the year 1873, for their own and friends' use, and had them charged to the said company."

The bill had previously alleged, that the Messrs. Johnsons owned a majority in interest in the stock of said corporation, and still voted this stock, though they had given a lien on it, and this allegation makes all the above allegations pertinent to the object, sought by the bill, the obtaining a decree to dissolve the corporation; for, if these allegations, were true, it would certainly tend to show, that a majority in interest of the stockholders had theretofore mismanaged the affairs of the corporation; and this would tend in a greater or less degree to show, that they ought not to be permitted to manage the affairs of the corporation longer, but that the management should be taken out of their hands by the only means, in which it could: a dissolution of the corporation by a decree of the court.

These allegations being pertinent to the objects of the bill, it matters not, how gross, outrageous, false or malicious they may be, they furnish no basis, as we have seen, for a libel suit; and the jury ought therefore to have found for the defendants, and not having so found, the court ought, on the motion of the defendants, to have set aside this verdict, and granted a new trial.

The court in *Warner* v. *Paine*, 2 Coms. 201, say, that "where it is fairly debatable, whether the matter is relevant or not, we would incline to give the party or counsel, using the words, the benefit of the doubt, which may fairly exist as to its pertinency."

In this case we consider the matter, alleged as libelous, was clearly relevant.

The judgment of the circuit court of November 14, 1876, must for these reasons be reversed; and the plaintiffs in error must recover of the defendant in error their

costs, in this court incurred; and this court proceeding to render such judgment, as the said circuit court ought to have done, doth set aside the verdict and award a new trial in said cause, the costs of the former trial to abide the final result of the suit; and this cause is remanded to the circuit court of Tyler county, to be there proceeded with according to the principles laid down in this opinion, and further according to law.

Judges HAYMOND and MOORE, concurred.

CAUSE REMANDED.